**INTERSTATE COMMERCE COMMISSION v. JAMESTOWN FARMERS UNION FEDERATED COOPERATIVE TRANSP. ASS'N.**

Civ. No. 455.

District Court, D. Minnesota, Third Division.

Oct. 24, 1944.

750

Victor E. Anderson, U. S. Atty., and William P. Murphy, Asst. U. S. Atty., both of St. Paul, Minn., George H. English and Gregory U. Harmon, both of Washington, D. C., and Herman L. Bode, of Minneapolis, Minn., for Interstate Commerce Commission, for plaintiff.

Peter T. Egan, of So. St. Paul and Wilfrid E. Rumble, of St. Paul, Minn. (Doherty, Rumble, Butler, Sullivan & Mitchell, of St. Paul, Minn., of counsel), for defendant.

Robert J. Barry, of St. Paul, Minn., for St. Paul Bank for Cooperatives, amicus curiæ.

NORDBYE, District Judge.

This is an action instituted by the Interstate Commerce Commission seeking to enjoin the defendant from alleged violations of Sections 206(a) and 209(a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 306(a) and § 309(a). These sections require that all common and contract carriers, which carry goods by motor vehicle and which are subject to the provisions of the Act, must procure a certificate of public convenience and necessity from the Interstate Commerce Commission as a condition for operating their vehicles in such transportation. Section 303(b) of the same Act provides, however, that "Nothing in this chapter, except the provisions of section 304 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (5) motor vehicles controlled and operated by a cooperative association as defined in sections 1141–1141j of Title 12, as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined; * * *."

Defendant is a federation of cooperative associations. Its members are themselves cooperative associations. Defendant's business consists exclusively of transporting livestock from its members in the State of North Dakota eastward to the stockyards at South St. Paul, Minnesota, by motor truck for compensation, and the transportation for compensation on the westward return trip from one of the defendant cooperative members in South St. Paul, Minnesota, of various merchandise for its North Dakota cooperative associations. All the association members which own and control the defendant are farmer-owned and controlled, and they are the means by which their member farmers act together in marketing their farm products and in purchasing their farm supplies. Approximately 3 to 14 per cent of the merchandise defendant delivers to its North Dakota members from South St. Paul, Minnesota, is sold to persons who are not farmers.

The Agricultural Marketing Act of 1937, as now amended, is found in Sections 1141 to 1141j, Title 12 U.S.C.A. In passing this Act, it was the policy of Congress, as declared in Section 1141: "* * * to pro-

mote the effective merchandising of agricultural commodities in interstate and foreign commerce, so that the industry of agriculture will be placed on a basis of economic equality with other industries, and to that end to protect, control, and stabilize the currents of interstate and foreign commerce in the marketing of agricultural commodities and their food products— * * * (3) by encouraging the organization of producers into effective associations or corporations under their own control for greater unity of effort in marketing and by promoting the establishment and financing of a farm marketing system of producer-owned and producer-controlled cooperative associations and other agencies."

Sections 1141a to 1141i provide for the creation of a Farm Credit Administration and its powers and purposes, and detail the aid which can be accorded to cooperative associations by the Administration. It is in Section 1141j that we find the definition of a cooperative association. It reads:

"As used in this subchapter, the term 'cooperative association' means any association in which farmers act together in processing, preparing for market, handling, and/or marketing the farm products of persons so engaged, and also means any association in which farmers act together in purchasing, testing, grading, processing, distributing, and/or furnishing farm supplies and/or farm business services: Provided, however, That such associations are operated for the mutual benefit of the members thereof as such producers or purchasers and conform to one or both of the following requirements:

"First. That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein; and

"Second. That the association does not pay dividends on stock or membership capital in excess of 8 per centum per annum.

"And in any case to the following:

"Third. That the association shall not deal in farm products, farm supplies, and farm business services with or for nonmembers in an amount greater in value than the total amount of such business transacted by it with or for members. All business transacted by any cooperative association for or on behalf of the United States or any agency or instrumentality thereof shall be disregarded in determining the volume of member and nonmember business transacted by such association."

▮ At the outset, it seems clear that Congress intended to recognize that a cooperative association and a federation of cooperative associations could be in the transportation business for hire as a contract carrier and be exempt from the control of the Commission except in the particulars referred to. This must be evident from the very nature and purpose of the exemption granted under Section 303(b). Plaintiff recognizes that a single cooperative which renders service to farmer members by hauling from the farm to market their produce, cattle, etc., and hauling to them from various sources farm supplies, would be exempt under the section referred to. In performing this type of transportation, it seems apparent that the cooperative is "handling, and/or marketing the farm products" or "distributing, and/or furnishing farm supplies and/or farm business services." The language of the Agricultural Marketing Act above quoted is sufficiently broad to include transportation within its contemplation. For instance, marketing livestock requires many acts. Usually livestock is not sold unless they are transported to market by some means or method. The sale is only the final act of the marketing process. In the olden days, one person, generally the owner, did all the acts of marketing. He drove the cattle from the farm to the butcher in the neighboring town where the sale took place. In these times, however, the farmers, in order to avail themselves of better prices, send their cattle longer distances from the farm, and the fact that the cattle are taken to market in a truck, rather than driven afoot by the farmer, would not seem to change the fact that in both instances the cattle are being marketed. Moreover, the purchasing, distribution and furnishing of farm supplies would also appear to include the transportation of them, and it may be pointed out that the legislative history of the amendment which added "farm business services" as an activity of cooperatives permissible under Section 1141j tends very strongly to establish that the transportation of the farmer's livestock and his supplies can be fairly included within that phrase. The reports of the committee meetings in Congress in connection with this amendatory legislation plainly indicate that it was contemplated that farm coop-

eratives within the purview of the Agricultural Marketing Act could enter into any business if in so doing "farm business service" was rendered. It may not be amiss to state again that, by exempting a federation of cooperatives from the operation of this transportation statute, which plaintiff now seeks to enforce, it must follow that Section 303(b) necessarily assumes that transportation is an activity in which such cooperatives may engage within the meaning of the Agricultural Marketing Act. Otherwise, the passage of the exemption is an utter futility.

■ This brings us to the question as to whether or not the defendant as a federation of cooperatives is exempt under the Act in carrying on the transportation business heretofore noted. It seems clear that Congress intended to grant the same exemption to a federation of cooperatives as to a single cooperative "if such federation possesses no greater powers or purposes than cooperative associations so defined." The definition of a cooperative under the Agricultural Marketing Act has heretofore been set forth. It is of controlling significance that the stipulation between these parties recites that the defendant is a federation of cooperatives which "possesses no general powers or purposes other than those possessed under charter (or other instrument of organization) of each of such member associations." It is further stipulated that the cooperative associations which own and control the defendant are cooperative associations which perform the functions and observe the restrictions set forth in Section 1141j. Further, it is stipulated that these member cooperative associations are farmer-owned and controlled and are associations in which farmers act together in marketing the farm products of their members or in purchasing farm supplies for their members, or are a federation of such associates. In view, therefore, of the stipulation, it reasonably follows that all of the members of defendant are bona fide corporations within the meaning of Section 1141j. Further, that defendant possesses no greater powers or purposes than the cooperatives defined under that section. No other rational interpretation can be accorded the language of the stipulation, and plaintiff has not seriously urged to the contrary. This reduces the controversy to this single question: Is the defendant in carrying on the transportation business of the character heretofore noted performing functions which are granted to cooperatives under Section 1141j? The plaintiff recognizes that the defendant, as a federation of cooperatives, would be exempt under the Act if its transportation business was limited to the hauling of livestock from the farm and the hauling of farm produce and supplies direct to the farm. But it earnestly urges that a restrictive interpretation should be accorded to the powers of a cooperative which are embraced within the exemption. Plaintiff argues that defendant is not within the Agricultural Marketing Act definition because not only are the defendant members not farmers, but no direct service is rendered by the defendant to the farm or to the farmers. But a reference to Section 303(b) finds no support for plaintiff's proposed strictness of construction. The general rule that exemptions are to be construed strictly should not be applied under the circumstances herein so as to destroy the very purpose of the legislation. The broad powers with which cooperatives are clothed within the meaning of the Agricultural Marketing Act should not be unduly restricted in interpreting the exemption. It seems quite evident that, in passing this legislation, Congress intended to aid and assist the cooperatives in carrying on their activities within the meaning of the Act so as to free them from the burden of obtaining a certificate of public convenience and necessity as a condition for the transportation by motor vehicle of farm products and farm supplies.

■ The Agricultural Marketing Act does not require that all members of a cooperative must be farmers. It merely says that a cooperative association means any association in which farmers act together in the handling and/or marketing of farm products of the persons so engaged and also an association in which farmers act together in purchasing, distributing and/or furnishing farm supplies and/or farm business services. The fact that defendant's members are not farmers, but are other cooperatives, is not fatal to defendant's status under the Act if farmers act together in the furtherance of its activities within the purview of the Act. That the defendant is an organization in which farmers act together cannot be seriously controverted. Undoubtedly, the farmers in practice have found it to be more efficient in the marketing of their livestock to have

the cattle, etc., assembled at the place of business of the local associations, and then transported from such local places to the market in South St. Paul. And presumably they have also determined that the purchase and distribution of farm supplies is more economical and more efficiently handled under an arrangement whereby such supplies are transported to the local cooperatives for distribution among their farmer members. In other words, the local member cooperatives have but one object, and that is to further the business and farming activities of its farmer members within the purview of the Agricultural Marketing Act. In order to attain such objectives and such purposes more effectively, the local associations have united into a federated cooperative organization which carries on their transportation business.

Section 1141j does not expressly require that the marketing of farm commodities and the purchasing and distribution of farm supplies by a federation or any other cooperative shall be carried on directly with the farm to which they are ultimately to go, and in view of the purposes of the Agricultural Marketing Act, there is no implication therein which would justify such a construction. The purpose of the Act is to aid the farmer. Methods of marketing and distribution beneficial to him were obviously intended. That it may be more advantageous to the farmer under certain circumstances to have a large cooperative doing the buying of farm supplies, etc., for the smaller local cooperatives seems evident. Moreover, it would not only be most difficult but highly uneconomical and a frustration of the very beneficial purposes of the Act to require a federation of cooperatives to send its trucks to deliver or pick up from the individual farmer a very small fraction of a load. In the final analysis, under the system adopted by the defendant and its members, the marketing of farm commodities and produce and the distribution of farm supplies are evidently carried on with greater efficiency, and greater financial benefits inure to the individual farmers who belong to the local cooperatives. Such a practice is entirely consonant with the purposes of the Agricultural Marketing Act. It definitely consists of a rendering of farm business services to the farmers.

Some contention is made that the defendant is without the Agricultural Marketing Act because some of the farm supplies which it transports to its members may not be sold by the local cooperatives to farmers. But Section 1141j permits an association to do business with non-members. The provision in this regard has already been noted. The record herein indicates that the mandates of this provision are fully recognized and followed by the member cooperatives of this defendant. Moreover, cooperatives which are in the retail business of furnishing farm supplies to its members are confronted with certain practical problems in meeting competition with other retail institutions in their community. Necessarily, goods must be handled by them which may not be strictly farm supplies. Some of their customers may not be members or even farmers. But if the cooperative is predominantly engaged in one or more of the activities specified in the Agricultural Marketing Act, and if its business with non-members is in an amount not greater in value than the total amount of the business that it transacts with its own members, such association does not lose its fundamental character as a cooperative. In other words, if such activities are merely incidental to, and necessary for the effectuation of the cooperative's principal activities as embraced within the Act, the status of the cooperative remains unimpaired. Such views have been reflected in the time-tested administrative practice of the Farm Credit Administration in connection with the availability of loans to cooperatives from the banks for cooperatives, and such practice seems in harmony with the purposes of the statute.

It follows, therefore, that, under the stipulation of facts, the defendant is a federation of cooperatives within the meaning of Section 303(b). It further follows that it is a federation of cooperatives within the meaning of the Agricultural Marketing Act, and in carrying on its business as a contract carrier for its member cooperatives it is handling and/or marketing the farm products of farmers who are acting together in member cooperative organizations and also is an association in which farmers act together by means of such transportation in the purchasing, distributing, and furnishing of farm supplies. Moreover, such transportation constitutes the furnishing and rendering of farm business services. It is therefore within the exemption provision of Section 303(b) of Part II of the Interstate Commerce Act.

The prayer for an injunction will be denied.

An exception is reserved to the plaintiff.

Findings of fact and conclusions of law in harmony herewith may be presented by the defendant.