**NORTHWEST AGRICULTURAL COOP-
ERATIVE ASSOCIATION, Inc., a
corporation, Appellant,**

v.

**INTERSTATE COMMERCE COMMIS-
SION, Appellee.**

**No. 19700.**

United States Court of Appeals
Ninth Circuit.

Aug. 10, 1965.

Clifford N. Carlsen, Jr., Harvey C. Barragar, King, Miller, Anderson, Nash & Yerke, Portland, Or., for appellant.

Sidney I. Lezak, U. S. Atty., Harold E. Patterson, Reg. Atty., I.C.C.; Portland, Or., Bernard A. Gould, I.C.C., Washington, D. C., for appellee.

John C. Bagwell, Gen. Counsel, Neil Brooks, Asst. Gen. Counsel, Jesse R.

Farr, Robert E. Duncan, Attys., Dept. of Agriculture, Washington, D. C., for amicus curiae U. S. Secretary of Agriculture.

L. James Harmanson, Jr., Harry Ross, Washington, D. C., for amicus curiae Nat. Counsel of Farmer Cooperatives.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

The Northwest Agricultural Cooperative Association seeks review of an injunction prohibiting it from engaging in certain trucking operations without authorization by the Interstate Commerce Commission.[1]

The following facts were established by stipulation and by the unchallenged affidavit of Northwest's president. Northwest was organized to transport its members' farm products to market at lower cost. The volume of farm supplies brought back from the market areas for members does not equal the volume of farm products shipped to those areas. Consequently, Northwest back-hauls non-farm commodities. This is the traffic enjoined. In a four-month period this traffic produced $41,000 in revenues out of a total of $230,375. If Northwest is denied this income, its cost of transporting farm products to market will exceed the cost of available common carriage, and Northwest will be forced to discontinue its trucking operation.

Northwest contends that its trucking operation is exempted from Commission economic regulation by section 203(b) (5) of the Interstate Commerce Act (49 U.S.C.A. § 303(b) (5)), which excludes from such regulation "motor vehicles controlled and operated by a cooperative as-

---

1. The district court's opinion is reported at 234 F.Supp. 496 (D.Or. 1964).

2. Sec. 203(b) of the Interstate Commerce Act (49 U.S.C.A. § 303(b)) reads in part as follows:
     (b) Nothing in this chapter, except the provisions of section 304 of this

title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (4a) motor vehicles controlled and operated by any farmer when used in the transportation of his agricultural

sociation as defined in the Agricultural Marketing Act. * * * " [2] We agree.

## I

Section 203(b) (5) was added to the Interstate Commerce Act by floor amendment. The legislative history consists of a brief discussion in the House.[3] The statements made during the short debate indicate that Congress intended to accomplish the result which the statutory language plainly states: that is, to exempt from economic regulation under the Interstate Commerce Act trucking operations conducted by organizations which satisfy the definition of a "cooperative association" in the Agricultural Marketing Act.[4] As Congressman Jones said in introducing the amendment which became section 203(b) (5) of the Interstate Commerce Act, (49 U.S.C.A. § 303(b) (5) ) "it would exempt cooperative associa-

tions [which] comply with the" Agricultural Marketing Act.[5] Nothing in the debate suggests that Congress intended to limit the type of commodity hauled or otherwise condition the exemption granted to any organization which qualified as an Agricultural Marketing Act "cooperative association."

The absence of a commodity limitation in section 203(b) (5) contrasts with the presence of such limitations in the exemption provisions which precede and follow section 203(b) (5). See note 2, supra. The conclusion that this difference was deliberate is strengthened by the fact that the exemption provisions in section 203(b) (4a) and section 203(b) (5) were initially stated as clauses in a single sentence.[6]

Subsequent to the enactment of section 203(b) (5), bills were introduced

---

(including horticultural) commodities and products thereof, or in the transportation of supplies to his farm; or *(5) motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act, approved June 15, 1929 as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined;* or (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation * * * (emphasis added).

3. 79 Cong.Rec. 1218–21 (1935).

4. The pertinent provision of the Agricultural Marketing Act (12 U.S.C.A. § 1141j (a)) reads as follows:
   (a) As used in this subchapter, the term "cooperative association" means any association in which farmers act together in processing, preparing for market, handling, and/or marketing the farm products of persons so engaged, and also means any association in which farmers act together in purchasing, testing, grading, processing, distributing, and/or furnishing farm supplies and/or farm business services: *Provided, however,* That such associations

are operated for the mutual benefit of the members thereof as such producers or purchasers and conform to one or both of the following requirements:
   First. That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein; and
   Second. That the association does not pay dividends on stock or membership capital in excess of 8 percentum per annum.
   And in any case to the following:
   Third. That the association shall not deal in farm products, farm supplies, and farm business services with or for nonmembers in an amount greater in value than the total amount of such business transacted by it with or for members. All business transacted by any cooperative association for or on behalf of the United States or any agency or instrumentality thereof shall be disregarded in determining the volume of member and nonmember business transacted by such association.

5. 79 Cong.Rec. 12218 (1935).

6. Motor vehicles controlled and operated by any farmer and used in the transportation of his agricultural commodities and products thereof, or in the transportation of supplies to his farms; or motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act * * *. (79 Cong.Rec. 12218 (1935)).

in Congress at the request of the Commission to condition the section 203(b)(5) exemption upon the nature of the transportation activities involved.[7] Congress took no action on these proposals.[8]

For these reasons we conclude that if Northwest's transportation activities are to be limited in the manner suggested by the Commission, the limitation cannot be based upon section 203(b)(5) of the Interstate Commerce Act, but must be found in the definition of a cooperative association in the Agricultural Marketing Act.

## II

The Agricultural Marketing Act defines a cooperative association as "any association in which farmers act together in processing, preparing for market, handling, and/or marketing the farm products of persons so engaged" or "in which farmers act together in purchasing, testing, grading, processing, distributing, and/or furnishing farm supplies and/or farm business services." See note 4. Northwest's primary activity of transporting farm products and farm supplies, falls within the statutory definition. We agree with the parties that a cooperative does not lose its status by engaging in activity other than its primary statutory activity, so long as the other activity is incidental to the primary one and necessary to its effective performance.[9] This would appear

to end the case, since on the uncontradicted facts Northwest's transportation of non-farm products and supplies was incidental and necessary to its farm-related transportation both in character and in amount—incidental because limited to otherwise empty trucks returning from hauling member farm products to market, and producing a small return in proportion to Northwest's income from trucking farm products and farm supplies; necessary because it is not economically feasible to operate the trucks empty on return trips, and because the additional income obtained is no more than that required to render performance of the cooperative's primary farm transportation service financially practicable.

The Commission advances two arguments against this conclusion, the first based upon certain language of the Agricultural Marketing Act, the second upon material in the legislative history.

1. The Commission relies upon the provision in the Agricultural Marketing Act stating that a cooperative association "shall not deal in farm products, farm supplies, and farm business services with or for nonmembers in an amount greater in value than the total amount of such business transacted by it with or for members." See note 4. The Commission contends that this express limitation necessarily implies a further limitation that a cooperative association may not deal at all in *non-*

---

7. S. 677, 88th Cong., 1st Sess. (1963); H.R. 3770, 88th Cong., 1st Sess. (1963).

8. 78th Annual Report of the Interstate Commerce Commission 76–77 (1964).

9. ICC v. Jamestown Farmers Union, 57 F.Supp. 749, 753 (D.Minn. 1944), aff'd 151 F.2d 403 (8th Cir. 1945) ("But if the cooperative is predominantly engaged in one or more of the activities specified in the Agricultural Marketing Act, and if its business with non-members is in an amount not greater in value than the total amount of the business that it transacts with its own members, such association does not lose its fundamental character as a cooperative. In other words,

if such activities are merely incidental to, and necessary for the effectuation of the cooperative's principal activities as embraced within the Act, the status of the cooperative remains unimpaired"); Machinery Haulers Ass'n v. Agricultural Commodity Serv., 86 M.C.C. 5, 24 (1961) ("Thus, transportation rendered by a farmers' cooperative, which transportation is essential to, and in furtherance of, the lawful purposes of the cooperative as defined in the Marketing Act, is entitled to the benefits of the partial exemption").

This is also the Secretary of Agriculture's administrative interpretation of the Act. 6 C.F.R. § 70.3.

farm products, supplies, or business services.

The Commission's reading of the statutory language is unjustifiably strict. Reading the word "farm" as narrowly as the commission does would result in the exclusion of even incidental and necessary non-farm business. The obvious purpose of the provision is simply to require that the cooperative association conduct at least half of its business with members. By statutory definition, a cooperative association's business is that of "processing, preparing for market, handling, and for marketing * * * *farm* products, purchasing, testing, grading, processing, distributing, and/or furnishing *farm* supplies and/or *farm* business services * * *" (emphasis supplied). See note 4. Thus the phrase relied on by the Commission simply describes the primary business of any cooperative association conduct at least interpreted as excluding particular transactions which, though not directly farm-related, are an incidental and necessary part of the cooperative association's general business— —any more than should the descriptive of permissible cooperative association activities in the first sentence of the statutory definition.

█ The Commission argues that unless the transportation of non-farm products and supplies is absolutely prohibited, it cannot be limited at all. Farm business with non-members is limited to fifty per cent of a cooperative association's total business; but, argues the Commission, this limitation applies *only* to "farm" business, and therefore unless non-farm business is totally prohibited, the cooperative might engage in non-farm business with non-members without any limit at all. The argument rests on a faulty premise. A cooperative will retain its exemption only so long as it remains in essential character a "cooperative association". Thus it's activi-

ties must be such that it can be fairly described as a farmer organization primarily engaged in marketing farm products for farmers, or purchasing, testing, or furnishing farm supplies or farm services for farmers; and operating for the benefit of the members of the cooperative in their capacity as producers of farm products or purchasers of farm supplies or farm business services. See note 4. A cooperative would not be of this character if its non-farm related business exceeded that which was necessary and incidental to its farm-related business, and it is difficult to imagine circumstances under which non-farm related business could approach fifty per cent of the total and still remain incidental and necessary to farm-related business.

We are satisfied that the language of the Agricultural Marketing Act does not support the limitation for which the Commission argues.

2. The legislative history upon which the Commission relies consists of statements by members of Congress that cooperative associations qualifying under the Agricultural Marketing Act should not be permitted to enter "any line of business," but "only those connected with farm operations"; that they should furnish business services "not for any others," but "for themselves"; [10] and, more specifically, that they should not "go into the general trucking business." [11]

█ There is nothing in these or any other relevant legislative materials suggesting that Congress intended to impose an *absolute* prohibition upon transportation by an exempt cooperative association of commodities not intended for use in farm operations, without regard to whether such transportation was necessary and incidental to the performance of a primary activity of transporting farm products and supplies.

10. Hearing of Committee on Agriculture of House of Representatives on H.R. 4512, 74th Cong., 1st Sess. pp. 44, 80.

11. 79 Cong.Rec. 12219 (1935).

█ Northwest is not engaged in a "general trucking business." Its trucking operation, viewed as a whole, is a farm service performed jointly by Northwest's members "for themselves." The return hauls enjoined are "connected with farm operations," for they are incidental and necessary to the effective performance of Northwest's farm-related operations. This return haul transportation therefore did not deprive Northwest of its essential character as a "cooperative association" under the Agricultural Marketing Act. Since it retained this character it retained its right to exemption under section 203(b) (5) of the Interstate Commerce Act (49 U.S.C.A. § 303 (b) (5)).[12]

### III

█ The meaning which we ascribe to the term "cooperative association" accords with the general purpose of the Agricultural Marketing Act. The Act was intended to encourage the organization and operation of farm cooperatives;[13] its terms are to be liberally construed to effectuate that purpose.[14] It would defeat the purpose of the Act to construe the term "cooperative association" in such a way as to deny a cooperative the right to engage in incidental activities which, as a practical matter, are necessary to the performance of an activity authorized by that Act.

The Agricultural Marketing Act was not drawn with the regulation of transportation in mind, and its terms cannot be given one meaning for that purpose and another for the Act's purpose of encouraging agricultural cooperatives. The construction which we give the term does not open the door to unrestricted competition by exempt cooperatives with regulated carriers. If a cooperative engages in transportation for hire which is not incidental and necessary to the performance of an activity permitted by the Agricultural Marketing Act, it will lose its status as a "cooperative association" and its transportation activities will be subject to economic regulation by the Commission under the Interstate Commerce Act.

If the reach of the Agricultural Marketing Act is to be narrowed to serve the policies underlying the Interstate Commerce Act at the expense of those upon which the Agricultural Marketing Act is based, the readjustment must be made by Congress. Congress, it may be pertinent to note, has repeatedly rejected past efforts to induce it to alter the present balance.[15]

Reversed.

12. ICC v. Jamestown Farmers Union, 151 F.2d 403, 404–405 (8th Cir. 1945), is in accord. Three to 14 per cent of the commodities transported on return hauls were sold to non-farmers. 151 F.2d at 404.

13. 12 U.S.C.A. § 1141(a) provides: "It is declared to be the policy of Congress to promote the effective merchandising of agricultural commodities * * * (3) by encouraging the organization of producers into effective associations or corporations under their own control for greater unity of effort in marketing and by promoting the establishment and financing of a farm marketing system of producer-owned and producer-controlled cooperative associations and other agencies."

14. ICC v. Jamestown Farmers Union, 151 F.2d 403, 404 (8th Cir. 1945).

15. See generally, Linnenberg, 25 Law & Contemp. Prob. 139 (1960); Fulda, 11 Vand. L. Rev. 543 (1958); Fulda, 43 Va. L. Rev. 677 (1957). See notes 7 and 8, supra.