405 F.2d 639
 INTERSTATE COMMERCE COMMISSION, Plaintiff-Appellee,
v.
MILK PRODUCERS MARKETING COMPANY, William Cecil Jenkins,
Ralph Kapke, James Ellis, and Art Warren,
Defendants-Appellants, National Motor Freight Traffic
Association, Inc., Regular Route Common Carrier Conference,
and Common Carrier Conference--Irregular Route, Intervenors-Appellees.
 No. 114-68.
 United States Court of Appeals Tenth Circuit.
 Jan. 8, 1969, Rehearing Denied Feb. 7, 1969.
 
 Harry F. Horak, Kansas City, Mo. (Benjamin E. Franklin, U.S. Atty., Elmer Hoge, Asst, U.S. Atty., Joseph F. Walker, Fort Worth, Tex., and Bernard A. Gould, Washington, D.C., on the brief), for plaintiff-appellee.
 Robert H. Bingham, Kansas City, Kan., and Warren H. Sapp, Kansas City, Mo. (Lee E. Weeks, Kansas City, Kan., Leonard O. Thomas, J. D. Lysaught and Tom B. Kretsinger, Kansas City, Mo., on the brief), for defendants-appellants.
 Thomas M. Knebel, Washington, D.C. (John E. Jandera, Topeka, Kan., and Bryce Rea, Jr., Washington, D.C., on the brief), for intervenors-appellees.
 Before BREITENSTEIN and HICKEY, Circuit Judges, and ARRAJ, District judge.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Appellee-plaintiff, Interstate Commerce Commission, brought suit under 49 U.S.C. 322(b) to enjoin Milk Producers Marketing Company and four of its agents from engaging in the for-hire transportation of property by motor vehicle in violation of Part II of the Interstate Commerce Act, 49 U.S.C. 301 et seq. The appellees other than the Commission are three associations of motor vehicle carriers which operate under certificates issued by the Commission and which were permitted to intervene. The appellants-defendants contend that Milk Producers is an agricultural cooperative association within the definition contained in 12 U.S.C. 1141j(a), a part of the Agricultural Marketing Act, and as such is exempted from the pertinent provisions of the Interstate Commerce Act by 49 U.S.C. 303(b)(5). The district court granted the injunction and this appeal followed.
 
 
 2
 The principal business of Milk Producers is the acceptance, processing, handling, packaging, and marketing of milk and dairy products. It operates out of Lawrence and Kansas City, Kansas. A substantial part of its business is conducted in the 'Greater Kansas City marketing area.' In the period 1960-1965, Milk Producers, because of competition and other factors, operated at a loss. Its directors sought to improve its financial position by engaging in other enterprises. Among other things, they organized a transportation division and made arrangements with J & J Leasing Company for the lease of equipment and also made lease arrangements with private individuals. The income from the truck operations substantially improved the finances of Milk Producers.
 
 
 3
 In its milk and dairy operations, Milk Producers has a dairy fleet of motor vehicles which handles the products of members within a limited area, chiefly Kansas and a portion of Missouri. The transportation division operation covers extensive for-hire transportation of general commodities for nonmembers throughout the United States. The dairy fleet and the vehicles of the transportation division are operated separately and independently. Separate offices and accounts are maintained for the transportation division which operates under the control and direction of Milk Producers. The business done by the transportation division has not exceeded in value the total amount of business done by Milk Producers with its members. The Commission has not issued any certificate of public convenience and necessity for any of the interstate transportation carried on by the transportation division.
 
 
 4
 The position of Milk Producers is that the provisions of 49 U.S.C. 303(b)(5) completely and unqualifiedly exempt it from Commission regulation so long as the nonmember, nonproducer business of the transportation division is not greater in value than the business done by Milk Producers for its members. Except for certain provisions relating to hours of service of employees and safety standards, 303(b)(5) exempts from Title II of the Interstate Commerce Act 'motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act, approved June 15, 1929, as amended.'[1] The only qualifying condition is that the control and operation must be by an organization which comes within the definition of a cooperative association.
 
 
 5
 The Agricultural Marketing Act declares that the policy of Congress is 'to promote the effective merchandising of agricultural commodities in interstate and foreign commerce' and 'to protect, control, and stabilize the currents of interstate and foreign commerce in the marketing of agricultural commodities.'[2] A 'cooperative association' is defined as 'any association in which farmers act together in processing, preparing for market, handling, and/or marketing the farm products of persons so engaged, and also means any association in which farmers act together in * * * distributing, and/or furnishing farm supplies and/or farm business services' provided certain conditions are met.[3] The only pertinent condition is that 'the association shall not deal in farm products, farm supplies, and farm business services with or for nonmembers in an amount greater in value than the total amount of such business transacted by it with or for members.'[4]
 
 
 6
 The courts which have considered the application and construction of 303(b)(5) and 1141j(a) all hold that the transportation activities of a cooperative must be incidental to its primary statutory activity and necessary to the effective performance of that activity.[5] We accept these decisions. The Agricultural Marketing Act is remedial and must be liberally construed to effectuate its purpose.[6] A construction which permits the transportation of general commodities for nonmembers when such activity is incidental and necessary to the primary objective of the cooperative is reasonable.
 
 
 7
 The incidental and necessary standard permits the transportation of nonmembership, nonexempt shipments when those shipments are coordinated with membership shipments in the reverse direction. In such a situation, the haul of nonfarm products is incidental because otherwise one trip may be with an empty truck and necessary because it is not economically feasible to operate empty trucks.[7] The only limitation is that the value of the services for nonmembers must not exceed that of the total business transacted with or for members.
 
 
 8
 The situation presented in the instant case is entirely different. Here we have back-to-back hauling of general commodities for nonmembers throughout the United States by motor vehicles on a for-hire basis. Such activities are not incidental to the milk and dairy business operated within a comparatively small area in Kansas and Missouri. The only claim of necessity is that the profitable interstate truck operations are needed to sustain the money-losing primary activities of the cooperative. In our opinion this is not enough. A cooperative cannot enter the interstate trucking business without a certificate from the Commission for the reason that its primary activities are unprofitable. The operation by Milk Producers of its transportation division does not meet the incidental and necessary test and is not an activity permitted by the Agricultural Marketing Act.
 
 
 9
 Another matter remains to be considered. After the filing of the complaint herein but before the trial, Congress amended 303(b)(5) by the addition of the following:[8]
 
 
 10
 '* * * any interstate transportation performed by such cooperative association * * * except transportation otherwise exempt under this part, shall be limited to that which is incidental to its primary transportation operation and necessary for its effective performance and shall in no event exceed 15 per centum of its total interstate transportation services in any fiscal year, measured in terms of tonnage.'
 
 
 11
 Milk Producers amended its answer to assert that the amendment to 303(b)(5) unconstitutionally deprived it of its property without due process of law, and that the Commission should be restrained from enforcing the new statute. The argument now is that the amendment to the complaint ousted the district judge from authority to hear the case because under 28 U.S.C. 2282 a three-judge district court is requited to hear an application for an injunction to restrain the enforcement of a federal statute.
 
 
 12
 The Commission did not seek, and the district court did not enter, an injunction under or in reliance on the 1968 amendment. That amendment codifies the incidental and necessary rule which the courts had applied theretofore and which we have held applicable. The issue before the trial court was whether the activities of the transportation division of Milk Producers were exempt from regulation by the Commission under the law as it existed when the suit was filed. If that issue had been resolved in favor of Milk Producers and if the Commission claimed that the amendment applied, the constitutional question might have been presented for determination. The district court correctly held that no constitutional question was presented and that it had the authority to grant the injunction.[9]
 
 
 13
 Affirmed.
 
 
 
 [1]
 Section 303(b)(5) was added to the Interstate Commerce Act by a floor amendment in the House and its legislative history consists of a brief debate in the House. See 79 Cong.Rec. 1218-1221 (1935). For a discussion of this legislative history see Northwest Agricultural Cooperative Association, Inc. v. Interstate Commerce Commission, 9 Cir., 350 F.2d 252, 254-255, cert. denied 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526, and Agricultural Transportation Association of Texas v. King, 5 Cir., 349 F.2d 873, 879, n. 19. We see nothing in the legislative histroy to suggest any congressional limitation on the exemption other than the requirement that the organization be within the definition found in the Agricultural Marketing Act
 
 
 [2]
 12 U.S.C. 1141(a)
 
 
 [3]
 12 U.S.C. 1141j(a)
 
 
 [4]
 Id
 
 
 [5]
 See Interstate Commerce Commission v. Jamestown Farmers Union Federated Coop. Transp. Ass'n, D.Minn., 57 F.Supp. 749, 753, affirmed 8 Cir., 151 F.2d 403; Northwest Agricultural Cooperative Association, Inc., v. Interstate Commerce Commission, 9 Cir., 350 F.2d 252, 255, cert. denied 382 U.S. 1011, 86 S.Ct. 620; Agricultural Transportation Association of Texas v. United States, N.D.Texas, 274 F.Supp. 528, 534; and Interstate Commerce Commission v. All American Association, N.D.Texas, 281 F.Supp. 18, 21. The Administrative interpretation of the Secretary of Agriculture is in accord. See 6 C.F.R. 70.3. A 1968 amendment to 303(b)(5) later mentioned herein codifies the decisions by providing that interstate transportation by cooperatives shall be limited to that which is incidental to a primary transportation operation and necessary for its effective performance. See Public Law 90-433, 82 Stat. 448
 
 
 [6]
 Interstate Commerce Commission v. Jamestown Farmers Union Federated Coop. Transp. Ass'n, 8 Cir., 151 F.2d 403, 404
 
 
 [7]
 See Northwest Agricultural Cooperative Association, Inc., v. Interstate Commerce Commission, 9 Cir., 350 F.2d 252, 255
 
 
 [8]
 Act of July 26, 1968, Public Law 90-433, 82 Stat. 448
 
 
 [9]
 See Wicks v. Southern Pacific Co., 9 Cir., 231 F.2d 130, 134, cert. denied Wicks v. Brotherhood of Maintenance of Way Emp. Southern Pac. Co., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471