**INTERSTATE COMMERCE COMMIS-SION, Plaintiff-Appellee,**

v.

**BIG SKY FARMERS AND RANCHERS MARKETING COOPERATIVE OF MONTANA et al., Defendants-Appellants.**

**No. 26858.**

United States Court of Appeals, Ninth Circuit.

Nov. 1, 1971.

Rehearing Denied Dec. 13, 1971.

Rodney E. Nelson, of Nelson, Liker & Merrifield, Los Angeles, Cal., G. Robert Crotty, Jr., Leo Graybill, Jr., Great Falls, Mont., for defendants-appellants.

Robert S. Griswold, Jr., San Francisco, Cal., Carolyn Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, KOELSCH and HUFSTEDLER, Circuit Judges.

KOELSCH, Circuit Judge.

This appeal concerns a question of the scope of 49 U.S.C. § 303(b) (5)—the provision of the Interstate Commerce Act which extends to agricultural "cooperative associations" [12 U.S.C. § 1141j(a)], a limited exemption from the certification requirements of the Act and affords cooperatives the privilege to operate in interstate commerce as motor carriers for compensation without authorization from the Interstate Commerce Commission.

Specifically, it involves the question of the validity of a permanent injunction which prohibits Big Sky from transporting in interstate commerce for and on behalf of the United States, for compensation, a tonnage of commodities in excess of fifteen percent of the total tonnage transported annually by Big Sky. The answer requires a careful consideration of the exemption provision.

49 U.S.C. § 303(b) (5), prior to its amendment in 1968, exempted from Commission regulation "motor vehicles controlled and operated by a cooperative association, as defined in the Agricultural Marketing Act * * * as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined * * *." (54 Stat. 919). Because the subsection was, in terms, unconditional and lacking in limitation, considerable controversy arose between the Commission and many cooperatives who claimed

to be entitled to its benefits. *See, e. g.,* I.C.C. v. Jamestown Farmers Union Federated Co-op. Transp. Ass'n, 151 F.2d 403 (8th Cir. 1945); Agricultural Transp. Ass'n of Texas Investigation of Operations, 96 M.C.C. 293 (1964); Cache Valley Dairy Ass'n Investigation of Operations, 96 M.C.C. 616 (1964). The Commission took the position that the exemption applied only so long as the hauling was wholly farm related, and that a cooperative which hauled any cargo for non-farmers was subject to economic regulation under the Interstate Commerce Act. However, this court, in Northwest Agricultural Cooperative Ass'n Inc. v. Interstate Commerce Commission, 350 F.2d 252 (9th Cir. 1965), cert. denied 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526, rejected that construction and declared that the subsection was to be followed literally, and that it granted a full exemption to an organization which qualified as an Agricultural Marketing Act "cooperative association."

Turning to the Agricultural Marketing Act for definition, we first opined that "a cooperative does not lose its status by engaging in activity other than its primary statutory activity, so long as the other activity is incidental to the primary one and necessary to its effective performance." 350 F.2d at 255. We then held that, "Northwest's transportation of non-farm products and supplies was incidental and necessary to its farm-related transportation both in character and in amount—incidental because limited to otherwise empty trucks returning from hauling member farm products to market, and producing a small return in proportion to Northwest's income from trucking farm products and farm supplies; necessary because it is not economically feasible to operate the trucks empty on return trips, and because the additional income is no more than that required to render performance of the cooperative's primary farm transportation service financially practicable." *Id.*

Immediately following the Supreme Court's denial of certiorari of the deci-sion in *Northwest,* the Commission urged Congress to revise and clarify the exemption; the result was the 1968 amendment. By it, subsection (5) was retained verbatim, but there was added "clarifying and limiting language to the exemption therein contained. This clarifying and limiting language [was] itself limited by three provisos." H.Rep.No. 1667, 2 U.S.Code Cong. and Admin. News, 90th Cong. 2d Sess. (1968) at p. 2766. Thus upon enactment of the bill, subsection (5) was made to read as follows:

"(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (5) motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act, approved June 15, 1929, as amended, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than cooperative associations so defined, but any interstate transportation performed by such a cooperative association or federation of cooperative associations for nonmembers who are neither farmers, cooperative associations, nor federations thereof for compensation, except transportation otherwise exempt under this chapter, shall be limited to that which is incidental to its primary transportation operations and necessary for its effective performance and shall in no event exceed 15 per centum of its total interstate transportation services in any fiscal year, measured in terms of tonnage: Provided, That, for the purposes hereof, notwithstanding any other provision of law, transportation performed for or on behalf of the United States or any agency or instrumentality thereof shall be deemed to be transportation performed for a nonmember: Provided further, That any such cooperative association or federation

which performs interstate transportation for nonmembers who are neither farmers, cooperative associations, nor federations thereof, except transportation otherwise exempt under this chapter, shall notify the Commission of its intent to perform such transportation prior to the commencement thereof: And provided further, That in no event shall any cooperative association or federation which is required hereunder to give notice to the Commission transport interstate for compensation in any fiscal year of such association or federation a quantity of property for nonmembers which, measured in terms of tonnage, exceeds the total quantity of property transported interstate for itself and its members in such fiscal year."

The District Court, 321 F.Supp. 79, ruled that, so long as the hauling was incidental and necessary, the amendment limited a bona fide cooperative's hauling for nonmembers to a tonnage of freight not exceeding that hauled by the cooperative for itself and its own members during any twelve month period; that the hauling for nonmembers, who were neither farmers nor cooperatives, could not exceed 15 percent of the total tonnage of freight hauled by the cooperative during such year and that the amount of hauling for the government was included in the 15 percent limitation.

■ Big Sky disputes the court's ruling only insofar as it places the larger limitation on the permissible government hauling. Its contention is that the language of the subsection, properly construed, requires the government to be treated as a nonmember farmer, with the result that up to one-half of the tonnage of freight a cooperative hauls may consist of nonexempt government commodities.[1] We disagree.

The legislative history of the 1968 amendment leaves no doubt that Congress intended to impose the 15 percent restriction upon the hauling performed by a cooperative for nonfarmers, including that done for or on behalf of the United States government. The Senate Commerce Committee, in its report which recommended the enactment of the bill to amend section 303(b) (5), made this explanation concerning the basis for and application of the 15 percent provision:

"Included in the base would be any interstate (motor) tonnage transported by a cooperative of its own property, its members, of nonmember farmers or other farmers or other cooperatives or federation, exempt commodities and 'other' nonmember for-hire transportation. The 'other' nonmember for-hire transportation which may not lawfully exceed 15 percent of the tonnage would include any transportation for the U. S. government. * * * The first proviso of section 1 of the Committee amendment makes it clear that (interstate motor) transportation performed by a cooperative on behalf of the United States or any agency or instrumentality thereof shall be defined to be transportation performed for a nonmember. As heretofore indicated, such transportation for the government is subject to the 'incidental and necessary' and 15 percent maximum tonnage limitation. However, if the traffic transported for the government is of agricultural commodities exempted under section 203(b) (6) such tonnage would fall within the total but would not be subject to the 15 percent maximum limitation."

S.Rep.No.1152, 90th Cong. 2d Sess. (1968) at 13.[2]

---

1. Big Sky does not contend that the Government is a farmer, cooperative association, or federation; nor does it contend that the commodities it hauls for the Government were exempt commodities under any other provision of law.

2. The statement of the House Committee appearing in its own report is identical in all material respects to that of the Senate Committee. See H.Rep.No.1667, 2 U.S.Code Cong. and Admin.News, 90th Cong. 2d Sess. at pp. 2770–2771 (1968).

Big Sky also urges error in the denial of a stay of the injunction proceeding pending a decision of the Commission on Big Sky's application for a certificate of public convenience and necessity. It argues that the court should have respected the doctrine of primary jurisdiction and deferred further proceeding in this suit until the administrative agency had acted and, in addition, argues that the court's ruling constituted an abuse of discretion. Again we must disagree.

The doctrine of primary jurisdiction is inapplicable to this case; the material issues being essentially legal, not factual, they are not peculiarly within the field of the Commission's special expertise, but are the sort properly referred in the first instance to judicial consideration and decision. Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922); 3 Davis, Administrative Law Treatise, sec. 19.01–19.02 (1958) at 1–14.[3]

A court enjoys a broad discretion in the granting or denial of an injunction. Here the record does not manifest any abuse of discretion. True, Big Sky was engaged in the hauling of government commodities since before the 1968 amendment and had pending its application to the Commission for a certificate at the time this suit was commenced. Nevertheless, "A stay is not a matter of right, even if irreparable injury might otherwise result to the [applicant]. Virginian R. Co. v. United States, 272 U.S. 658, 672, 47 S.Ct. 222, 228, 71 L.Ed. 463 (1926). Big Sky's activities were illegal insofar as they exceeded the scope of the statutory exemption. The court below found (and we conclude, properly) that it would be contrary to the public interest to allow Big Sky to continue such activities for the indeterminable period of time that might elapse before the Commission's decision. Furthermore, Big Sky was, in effect, seeking from the court what it has yet to receive from the Commission—authority to act as a common carrier. Such judicial relief should be granted only in the most extraordinary of circumstances, not apparent here.[4] And, finally, we point out that Congress did not see fit to soften the impact of the amendment to section 303(b) (5) on already-operating cooperatives; it intentionally omitted "grandfather" clauses from the amendment. See Statement of Rep. Springer, 114 Cong.Rec., July 15, 1968, at 21,463.[5]

3. The Commission itself is the party plaintiff in this action, which is a statutory enforcement proceeding under 49 U.S.C. § 322(b). There is no administrative procedure involved in section 322 injunction proceedings, thus there is no administrative proceeding to which the District Court might have deferred. The certification proceedings, to which Big Sky asked the court to defer, are another matter entirely, and are irrelevant to the determination of whether Big Sky's current operations are legal.

4. Further underscoring the lack of equity in Big Sky's position is the fact that Big Sky has not attempted to obtain a temporary certificate from the Commission pursuant to the provisions of 49 U.S.C. § 310a; that section expressly confers upon the Commission the power to "grant temporary authority" in cases in which it is deemed that an "immediate and urgent need" exists for a proposed transportation service. And the Supreme Court has declared that the regulations under which the Commission proceeds in such matters, 49 CFR § 1131, are to be broadly construed, to provide "a swift and procedurally simple ability to respond to urgent transportation needs." American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 539, 90 S.Ct. 1288, 1293, 25 L.Ed.2d 547 (1970).

5. "There are some individual cooperatives which, desiring to maintain a profitable business, object to these changes. Some, recognizing the doubtful legality of their operations, have asked that they be legitimatized by a grandfather provision to grant them operating rights as regulated carriers summarily. The Committee did not see fit to do so and I must agree with this decision. If as a matter of fact public service and convenience and necessity will be served by their continuance in business an application to do so can be entertained by the Interstate Commerce Commission. It is not in the best interests of the public for Congress to make this decision. It is clearly with-

Big Sky's remaining points are entirely lacking in merit and are not of sufficient substance to warrant discussion.

Affirmed.

in the province of the Interstate Commerce Commission." 114 Cong.Rec. 21,463 (1968). And we might add, a court should not interfere with the Commission's primary jurisdiction in this area.