828 F.2d 1356
 34 Cont.Cas.Fed. (CCH) 75,252,
34 Cont.Cas.Fed. (CCH) 75,364
UNITED STATES of America, Plaintiff-Appellant,
v.
GENERAL DYNAMICS CORPORATION, James M. Beggs, Ralph E.
Hawes, Jr., David L. McPherson and James C.
Hansen, Jr., Defendants-Appellees.
 No. 86-5292.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 10, 1987.
Decided April 2, 1987.
Amended Sept. 23, 1987.
Dissent filed April 29, 1987.
Amended Sept. 23, 1987.
 
 Samuel Rosenthal, Washington, D.C., for plaintiff-appellant.
 James J. Gallagher, Max L. Gillam, Thomas E. Holliday and Douglas Dalton, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, WIGGINS and BRUNETTI, Circuit Judges.ORDER
 
 
 1
 The Amended Opinion, amending Opinion filed April 2, 1987, and Amended Dissent, amending Dissent filed April 29, 1987, submitted with this order, are ordered filed.
 
 
 2
 AMENDED OPINION*
 
 
 3
 The United States appeals from a district court order staying a criminal action involving allegations of conspiracy and fraud, 18 U.S.C. Secs. 371, 1001, against General Dynamics Corporation and several of that corporation's officers. The stay was entered pending the district court's referral to the Armed Services Board of Contract Appeals (ASBCA or Board) of questions relating to the interpretation of the contract upon which the criminal charges hinge. The government contends that, because the primary jurisdiction doctrine is not applicable, the district court exceeded its jurisdiction in making the referral and in halting criminal proceedings pending agency action. We agree.
 
 BACKGROUND
 
 4
 In 1978, General Dynamics was awarded an Army contract to develop two prototypes of the Division Air Defense (DIVAD) gun system. In 1985, General Dynamics and several General Dynamics officers (General Dynamics) were indicted on charges of conspiring to make and of making false and fraudulent cost statements to the Department of Defense. In essence, the indictment alleged that General Dynamics illegally attempted to offset losses on the DIVAD project by allocating DIVAD costs to Bid and Proposal (B & P) and Independent Research and Development (IR & D) accounts. In defense, General Dynamics contends that the DIVAD contract, which was stated to be a "firm fixed-price (best efforts) contract," either permitted the charges to the B & P and IR & D accounts or was ambiguous as to the propriety of such charges. If either were the case, it is claimed, General Dynamics would not be guilty of criminal wrongdoing.
 
 
 5
 On January 14, 1986, General Dynamics filed a notice of appeal from the indictment with the ASBCA. Citing two grounds, the ASBCA dismissed the appeal for lack of jurisdiction. General Dynamics, Pomona Division, ASBCA No. 32297, 86-2 B.C.A. (CCH) p 18,903. First the Board determined that the filing of an indictment did not meet the statutory prerequisite to an appeal--the existence of a final decision from a contracting officer. Id. at 95,348; see 41 U.S.C. Sec. 605(a).[1] Second, the Board found its jurisdiction precluded by the action pending in the district court because the fraud allegations, over which the court had exclusive jurisdiction, were inseparable from the issues General Dynamics was attempting to submit to the Board. General Dynamics, 86-2 B.C.A. at 95,348-49.
 
 
 6
 Despite the ASBCA's refusal to entertain General Dynamics' appeal, the district court, on September 15, 1986, entered an order in which it invoked the doctrine of primary jurisdiction to stay the litigation and refer issues of contract interpretation to the Board. The court's reasoning and the questions referred are set out in a written opinion issued October 1, 1986. United States v. General Dynamics Corp., 644 F.Supp. 1497 (C.D.Cal.1986) (amended October 28, 1986). The district court found that
 
 
 7
 [t]his case touches upon important issues in the area of defense procurement. Those issues involve nice questions about the proper construction of contracts and regulations. Those questions, in turn, call for expert consideration and uniform answers. Since the ASBCA is uniquely qualified to supply the needed answers, certain issues will be referred to it.[2]
 
 
 8
 Id. at 1507. The government timely noticed its appeal from the stay and referral. General Dynamics moved to dismiss the appeal for lack of a final, appealable order. The government then filed a protective petition for a writ of mandamus.
 
 
 9
 Following the commencement of proceedings in this court, the ASBCA, on February 3, 1987, dismissed General Dynamics' appeal that had been based on the district court's referral. ASBCA No. 33633. Again the Board determined that it had no jurisdiction over issues relating to the DIVAD contract because "there was neither a contracting officer's decision nor a claim submitted to the contracting officer under the DIVAD contract regarding the alleged 'mischarging' of costs." Id. at 5. The district court's order was held to be without jurisdictional significance: "The 'referral' by the district court does not constitute such a decision any more than the Grand Jury indictment which the Board considered in the prior appeal." Id. at 6.
 
 
 10
 The Board noted that related proceedings, ASBCA No. 34051, were pending before it. No. 34051 is based on claims submitted by General Dynamics in February 1986 to a contracting officer involving the B & P and IR & D accounts to which General Dynamics had shifted DIVAD costs. The contracting officer, in a letter dated April 16, 1986, stated that he would not issue a final decision on these claims until the fraud allegations pending before the district court were resolved. General Dynamics docketed an appeal from the contracting officer's refusal to issue a final decision on December 11, 1986.[3] The Board found that because the claims made in No. 34051 did not arise under the DIVAD contract, they could not serve to create jurisdiction in No. 33633, the appeal then before it.
 
 
 11
 In response to the Board's February 3 decision, the district court, on February 5, 1987, issued a scheduling order continuing the stay pending action by this court or by the Board in ASBCA No. 34051.
 
 DISCUSSION
 I.
 
 12
 As a threshold matter, we must determine whether this court has jurisdiction to pass on the propriety of the district court's stay and referral. The government contends that appellate jurisdiction lies under 28 U.S.C. Sec. 1291 and alternatively asserts that it is entitled to a writ of mandamus under the All Writs Act, 28 U.S.C. Sec. 1651.
 
 
 13
 Ordinarily, a stay is not considered a final decision for purposes of section 1291. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10 n. 11, 103 S.Ct. 927, 934, 74 L.Ed.2d 765 (1983); Silberkleit v. Kantrowitz, 713 F.2d 433, 434 (9th Cir.1983). However, "the general rule is inapplicable in situations ... where the impact of the stay is such that the plaintiff is 'effectively out of court.' " Id. (quoting Moses H. Cone Memorial Hosp., 460 U.S. at 9, 103 S.Ct. at 933 (quoting Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 n. 1, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962))).
 
 
 14
 Although we were initially skeptical that the district court's order was appealable at this time, upon further study and reflection upon the rather convoluted course that this litigation could take if it is stayed until the ASBCA acts on General Dynamics's appeal, we conclude that it is entirely possible that the Government could lose the opportunity to have the merits of its case decided by a court having jurisdiction over the criminal matters alleged in the indictment. In short, this stay could effectively put the government out of court.
 
 
 15
 Only the Court of Appeals for the Federal Circuit may review any decision that the ASBCA might enter. The Contracts Disputes Act (CDA or Act), 41 U.S.C. Secs. 601-613, provides that Board decisions are final, except that appeals may be taken to the Federal Circuit. 41 U.S.C. Sec. 607(g)(1); see also 28 U.S.C. Sec. 1295(a)(1) (granting to the Federal Circuit exclusive jurisdiction over appeals brought under section 607(g)(1)). Where, as here, a district court refers a case to an agency under the primary jurisdiction doctrine, and exclusive authority to review the agency's determination is granted to a court other than the referring district court, the district court is bound by determinations made in the collateral administrative proceedings and may not itself review the merits of the agency's decision. Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Translantic (Port of Boston), 400 U.S. 62, 64, 69-71, 91 S.Ct. 203, 206, 208-09, 27 L.Ed.2d 203 (1970). The district court is "under a duty to stay its proceedings pending ... review" of the agency's findings. Pennsylvania R.R. v. United States, 363 U.S. 202, 206, 80 S.Ct. 1131, 1133, 4 L.Ed.2d 1165 (1960). Thus, if the primary jurisdiction doctrine applies in this case, the district court must both await the outcome of any appeal that may be taken from the ASBCA and accept the contract construction arrived at in the collateral proceedings.[4]
 
 
 16
 Even if Port of Boston did not require the district court to accept the ASBCA's or the Federal Circuit's interpretation of the disputed agreements, traditional collateral estoppel doctrine very well could. See United States v. Stauffer Chemical Co., 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (holding that the doctrine of mutual defensive collateral estoppel is applicable against the government to preclude relitigation of the same issue already litigated against the same party in another case involving the same facts).[5] The Supreme Court has held that "the doctrine of collateral estoppel is not made inapplicable by the fact that this is a criminal case, whereas the prior proceedings were civil in character." Yates v. United States, 354 U.S. 298, 335, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957); see also People v. Sims, 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982). In the instant case, we need not and should not determine whether, in fact, the collateral estoppel doctrine would preclude the government from relitigating issues determined in the collateral contract-dispute proceedings. The Port of Boston decision alone requires that preclusive effect be given to determinations rendered in those proceedings. We simply note that traditional collateral estoppel rules may lead to the same result.
 
 
 17
 Thus, if General Dynamics were to appeal successfully an adverse ASBCA ruling, the district court would be required to accept the Federal Circuit's construction of the DIVAD contract. Similarly, if General Dynamics's version of the contract were affirmed by the ASBCA, that determination would be binding if the government were to forego its appeal[6] or if its appeal to the Federal Circuit were unsuccessful.[7]
 
 
 18
 The district court has expressed the opinion that if the DIVAD contract means what General Dynamics claims it means, that interpretation of the contract could dispose of the case.[8] Indeed, a comparison of the indictment with the questions referred to the ASBCA by the district court reveal that the issues are identical. The entire theory of the indictment is that General Dynamics submitted false, fictitious, and fraudulent statements to the government because its reports relating to B & P and IR & D accounts listed expenses that should have been charged to the DIVAD contract rather than B & P and IR & D accounts. The propriety of this cost shifting was squarely presented in the questions referred to the ASBCA.[9] If the cost shifting was permissible, the statements submitted to the government would not have been fraudulent or false. Thus, a decision adverse to the government in the collateral proceedings before the ASBCA, under the Port of Boston rule and quite possibly under the collateral estoppel doctrine, would require dismissal of the government's criminal prosecution. In short, the stay entered in this case could result in the government being "effectively out of court."[10] Accordingly, this court has jurisdiction over this appeal under 28 U.S.C. Sec. 1291.[11]
 
 II.
 
 19
 The question before us is whether the district court exceeded its authority in staying, on primary jurisdiction grounds, a criminal fraud prosecution pending action by the ASBCA on a related contract dispute. We appreciate the district court's concern that the complexities of military contracts and regulations are beyond conventional experience, and agree that ASBCA has expertise in such matters. We nevertheless are convinced that deferral to the ASBCA was an impermissible delegation of an article III judge's decision-making function and an unwarranted interference with prosecutorial discretion.
 
 
 20
 The doctrine of primary jurisdiction operates as follows: "When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." Port of Boston, 400 U.S. at 68, 91 S.Ct. at 208. The doctrine applies when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963). Thus, it is the extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in judicial proceedings that determines the scope of the primary jurisdiction doctrine. See United States v. RCA, 358 U.S. 334, 339, 79 S.Ct. 457, 461, 3 L.Ed.2d 354 (1959).
 
 
 21
 There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.[12] For example, in United States v. Western Pacific Railroad, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the parties disagreed as to whether shipments of steel casings filled with napalm gel could, in the absence of burster and fuse devices, be charged under a tariff established for incendiary bombs. The regulation of railroad tariffs had been turned over to the ICC under specific legislation regulating commerce. Furthermore, resolution of the issue required an appreciation of complex and intricate facets of transportation policy that "ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by the [Interstate Commerce] Act." Id. at 65, 77 S.Ct. at 166. Thus, the primary jurisdiction doctrine required that the agency created to regulate the activity in question, and which had initially determined why incendiaries warranted stiff tariffs, be afforded the opportunity to construe the tariff. Id. at 68, 77 S.Ct. at 167.
 
 
 22
 In the instant case, based on its findings that the defense industry is subject to governmental control "through webs of laws, regulations and directives," General Dynamics, 644 F.Supp. at 1504, which the ASBCA is uniquely qualified to untangle, the district court determined that referral of contract interpretation issues was necessary to ensure expert and uniform construction of government contracts and regulations. The court found the primary jurisdiction doctrine "to include virtually any case whose consideration lies within the competence of an administrative body." Id. While it is certainly true that the competence of an agency to pass on an issue is a necessary condition to the application of the doctrine, competence alone is not sufficient. The particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question.[13]
 
 
 23
 The district court recognized that "the ASBCA does not necessarily operate in the same fashion as the more traditional administrative agencies," but it identified several factors that it took as evidence that the ASBCA was an appropriate body for referral:
 
 
 24
 [The ASBCA] is certainly embedded in and even rather central to the operation of defense procurement. It performs traditional agency functions. It brings a highly honed and respected expertise to bear on this technical area, and makes authoritative determinations which have the effect of explaining and setting [Department of Defense] policy for the defense industry.
 
 
 25
 General Dynamics, 644 F.Supp. at 1505. What the court failed to note is (1) that the ASBCA is intended to be independent of the Department of Defense, see Report to the Chairman, Committee on Governmental Affairs United States Senate: The Armed Services Board of Contract Appeals Has Operated Independently, GAO/NSIAD-85-102 (Sept. 23, 1985); (2) that the traditional administrative function performed by the Board is strictly quasi-judicial, see 41 U.S.C. Sec. 607(d); and, most important, (3) that the Board is bereft of any statutory authority to act as a regulatory body.
 
 
 26
 The ASBCA was created pursuant to the Contract Disputes Act of 1978 (CDA or Act), 41 U.S.C. Secs. 601-613. The Act provides for the establishment of boards of contract appeals within executive agencies generally. 41 U.S.C. Sec. 607. For several reasons we are convinced that the Act itself forecloses any argument that Congress, in drafting the CDA, created a statute that grants regulatory authority to the boards of contracts appeals or requires them to have primary jurisdiction over issues of contract interpretation arising in criminal litigation.
 
 
 27
 First, there is no requirement that the ASBCA exist at all. Rather, the Act provides that "an agency board of contract appeals may be established when the agency head ... determines ... that the volume of contract claims justifies the establishment of a full-time agency board...." 41 U.S.C. Sec. 607(a)(1) (emphasis added). If an agency's volume of contract claims is insufficient to justify establishing its own board, the agency head is to "arrange for appeals from his agency to be decided by a board of contract appeals of another executive agency." 41 U.S.C. Sec. 607(c). Thus, the Act would seem to permit defense contract claims to be heard, for example, by the Agriculture Board of Contract Appeals. This statutory scheme belies a finding that Congress' intent in creating boards of contract appeals was to create bodies to administer specific statutes or even to create specialists in particular administrative areas. The fact that a board does become expert in a particular genre of contract disputes does not imply any particular intent on the part of Congress.
 
 
 28
 Second, the CDA does not require contractors to resolve their disputes with the government before boards of contract appeals: "in lieu of appealing ... to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court...." 41 U.S.C. Sec. 609(a)(1). In direct-action cases, the relevant board of contract appeals does not have primary jurisdiction, although the cases and issues are identical to those it was statutorily designed to entertain.[14] If there need be no resort to the ASBCA in run-of-the-mill contract disputes, certainly there can be no justification for staying a criminal proceeding pending ASBCA action.[15]
 
 
 29
 Finally, the overall scheme of the CDA reveals that boards of contracts appeals are simply not the type of administrative bodies that call the doctrine of primary jurisdiction into play. The purpose of the primary jurisdiction doctrine is not to secure expert advice for courts, but rather to secure a place for administrative power within our legal system: "Typically, the creation of a new agency means the addition to the legal system of a new lawmaking and law applying authority, with no explicit subtraction from the previously-existing power of the courts." 4 K. Davis, Administrative Law Treatise Sec. 22:1 at 81 (1983). The doctrine serves to avoid
 
 
 30
 the destructive effect upon the system of regulation devised by a [regulatory statute that] must be the result of construing the statute as giving authority to the courts without preliminary action by the [agency] to consider and pass on the administrative questions which the statute has primarily confided to that body....
 
 
 31
 Baltimore & O.R.R. v. United States, 215 U.S. 481, 496, 30 S.Ct. 164, 170, 54 L.Ed. 292 (1910). The primary jurisdiction doctrine is thus essentially concerned with ensuring that administrative bodies possessed of both expertise and authority delegated by Congress pass on issues within their regulatory authority before consideration by the courts.
 
 
 32
 Although the ASBCA may make determinations that "have the effect of explaining and setting DOD policy," General Dynamics, 644 F.Supp. at 1505, its statutory authority is limited to adjudicating contracts disputes.[16] The Board is not involved in the creation of regulations or in the drafting of military contracts and nothing in the CDA implies congressional intent to delegate policy-making or policy-implementing power to the Board. Thus, it has little in common with such bodies as the Interstate Commerce Commission or the Securities and Exchange Commission, which have quasi-legislative powers and are actively involved in the administration of regulatory statutes. Where, as here, the administrative body has not been "charged with primary responsibility for governmental supervision or control of the particular industry or activity involved," Port of Boston, 400 U.S. at 68, 91 S.Ct. at 208, the doctrine of primary jurisdiction has no application.
 
 
 33
 Our concern with the district court's stay and referral is heightened by the fact that this action is a criminal prosecution. While it is true that the primary jurisdiction doctrine has been applied in criminal cases, see United States v. Pacific & A. Ry. & Navigation Co., 228 U.S. 87, 106-08, 33 S.Ct. 443, 448-49, 57 L.Ed. 742 (1913); United States v. Yellow Freight Sys., 762 F.2d 737, 742 (9th Cir.1985), its use clearly interferes with the government's authority to prosecute criminal cases.[17] We said in a related context:
 
 
 34
 We approach the interpretation of the statute with a presumption against a congressional intention to limit the power of the Attorney General to prosecute offenses under the criminal laws of the United States. In general, the "conduct [of] federal criminal litigation ... is 'an executive function within the exclusive prerogative of the Attorney General,' " In re Subpoena of Persico, 522 F.2d 41, 54 (2d Cir.1975), quoting United States v. Cox, 342 F.2d 167 (5th Cir.1965) (Wisdom, J., concurring). Congress may limit or reassign the prosecutorial responsibility. See Case v. Bowles, 327 U.S. 92, 96-97, 66 S.Ct. 438 [440-41] 90 L.Ed. 552 (946); Nader v. Saxbe, 162 U.S.App.D.C. 89, 92-93, 497 F.2d 676, 679-80 n. 19 (D.C.Cir.1974); FTC v. Guignon, 390 F.2d 323, 324 (8th Cir.1968). But "[t]o graft such an exception upon the criminal law would require a clear and unambiguous expression of the legislative will." United States v. Morgan, 222 U.S. 274, 282, 32 S.Ct. 81, 82, 56 L.Ed. 198 (1911).
 
 
 35
 United States v. International Union of Operating Engineers, Local 701, 638 F.2d 1161, 1162 (9th Cir.1979), cert. denied, 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980).[18] As was the case in Operating Engineers, "[n]othing in [the CDA] suggests, much less clearly and [un]ambiguously states, that action by the Department of Justice to prosecute [this case] is conditioned upon prior consideration of the alleged violation by the [agency]. Indeed it would strain the language to imply such a condition." Id. at 1163.
 
 
 36
 Requiring the government to litigate issues central to a criminal prosecution in collateral agency proceedings is at odds with the general rule of prosecutorial discretion over the bringing of criminal indictments. See, e.g., United States v. Carrasco, 786 F.2d 1452, 1455 (9th Cir.1986) ("[C]harging decisions are generally within the prosecutor's exclusive domain.... [T]he separation of powers mandates judicial respect for the prosecutor's independence....") (citations omitted); United States v. Lee, 786 F.2d 951, 956-57 (9th Cir.1986) (same); United States v. Cox, 342 F.2d 167, 171 (5th Cir.) (describing the discretionary powers of the attorney general and finding that "as an incident of the constitutional separation of powers, ... the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions"), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). Only where an issue unambiguously requires initial agency determination under the primary jurisdiction doctrine, see, e.g., Yellow Freight Sys., 762 F.2d at 462, and the referring court has the authority to review the agency's order, can the agency's regulatory interests be required or allowed to subordinate the government's authority to prosecute criminal offenses. Accordingly, the district court's order is reversed and it is directed to lift its stay of the criminal action.
 
 AMENDED DISSENT
 BRUNETTI, Circuit Judge:
 
 37
 I dissent both from the majority's finding of appellate jurisdiction and the holding that primary jurisdiction is inapplicable.
 
 
 38
 * Appellate Jurisdiction
 
 
 39
 The district court's order is not a "final judgment" which is appealable at this time. The majority strains to find a final order where there is none by "reflection upon the rather convoluted course that this litigation could take" if further delayed. See Amended Opinion at 1360.
 
 A. Finality Required
 
 40
 Under 28 U.S.C. Sec. 1291, this court may only review "final judgments" of the district court. A judgment is "final" only when it "terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." United States v. Dior, 671 F.2d 351, 354 (9th Cir.1982). This court has previously concluded that a district court order granting a stay of a case pending a hearing by an administrative agency does not meet the finality requirements of Sec. 1291. Fugate v. Morton, 510 F.2d 307 (9th Cir.1975) (per curiam). Subsequent Supreme Court authority requires a more extensive analysis.
 
 B. Effectively Out of Court
 
 41
 A stay order is not ordinarily a final decision for purposes of Sec. 1291, 'unless it operates to put a party 'effectively out of court' or 'required all or an essential part of the federal suit to be litigated' in another forum." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 8-10, 103 S.Ct. 927, 932-34, text and n. 11, 74 L.Ed.2d 765 (1983).
 
 
 42
 In Cone Memorial, a hospital contracted with a building contractor to construct additions to the hospital. Contract disputes were to be referred to the architect overseeing the project. The contract provided that these disputes, whether or not decided by the architect, could then be submitted to binding arbitration. The hospital refused to pay the builder's claims for additional costs. Rather than submit the dispute to an arbitrator, the hospital filed an action in state court seeking a declaratory judgment that there was no right to arbitration. A few days later, the hospital obtained an ex parte injunction from the state court forbidding the builder from taking steps toward arbitration. When the builder objected, the state court dissolved the injunction. The builder then filed a diversity suit in Federal District Court, seeking an order compelling arbitration under Sec. 4 of the United States Arbitration Act. The District Court stayed the action pending resolution of the state court suit because the two suits involved the identical issue of arbitrability of respondent's claims.
 
 
 43
 The Supreme Court held that the district court's stay order was an appealable "final decision" under 28 U.S.C. Sec. 1291. Since the order was based on the conclusion that the federal and state actions involved the identical issue of arbitrability, and this issue was the only substantive issue present in the federal action, a stay of the federal action pending resolution of the state action meant that there would be no further litigation in the federal court:
 
 
 44
 Here, by contrast, the District Court predicated its stay order on its conclusion that the federal and state actions involved "the identical issue of arbitrability of the claims of Mercury Construction Corp. against the Moses H. Cone Memorial Hospital." App. to Pet. for Cert. A-38. That issue of arbitrability was the only substantive issue present in the federal suit. Hence, a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum; the state court's judgment on the issue would be res judicata.
 
 
 45
 460 U.S. at 10, 103 S.Ct. at 934 (emphasis added). Thus, the builder was "effectively out of court" because "this stay order amounts to a dismissal of the suit." Id.
 
 
 46
 Judge Fernandez's ruling in this case, on the other hand, does not amount to a dismissal of the indictment. First, as the government argued both in the district court and in this court, "referral would be futile, because the decision of the ASBCA will not bind this Court." United States v. General Dynamics Corp., 644 F.Supp. 1497, 1506 (C.D.Cal.1986). It is true, as the district court recognized, that
 
 
 47
 if under the proper construction of the Contract and the regulations, it is clear that it was proper to charge the expenses here exactly the way they were charged, the effect on this indictment would be most devastating.
 
 Id., 644 F.Supp. at 1497, and that
 
 48
 [T]he decision of the ASBCA on the proper construction of the regulations and the proper meaning of the language of the Contract may well resolve issues that will allow this court to dispose of all or a major portion of the case.
 
 
 49
 Id., 644 F.Supp. at 1497. The judge's recognition that the contract interpretation, if adopted, may make or break the indictment is not dispositive: the district court has not yet decided to dispose of the case. When the district court decides the case, its interpretation of the contract provisions and the applicability of the primary jurisdiction will be reviewable in this court.
 
 
 50
 The majority's entire "effectively out of court" analysis depends on the assumption that res judicata or collateral estoppel would preclude the government from relitigating issues determined in the collateral contract dispute proceedings. Yet rather than conclusively determining that res judicata applies, the majority simply notes that such a result is a possibility. A mere possibility is insufficient to make the district court's order final.
 
 
 51
 Even assuming that the ASBCA's interpretation of the contract is reviewable only by the Federal Circuit and could lead to issue preclusion in some criminal cases pending in a district court in the Ninth Circuit, it could not have that effect in this case. The issues before the ASBCA (and possibly the Federal Circuit) simply are not identical to those before the district court in this case. Cone Memorial, 460 U.S. at 10, 103 S.Ct. at 934.
 
 
 52
 The district court's referral was merely for questions of interpretation of this particular contract document. The referral did not request the ASBCA to determine the merits of General Dynamics' claims, or to rule on General Dynamics' actions or performance under the contract, or to address the criminal issues of conspiracy and fraud which are to be tried in a district court. Unlike the state court's decision in Cone Memorial, the ASBCA's response to the district court's questions will not address the only substantive issue present in the district court action, and ASBCA's answer will not be res judicata. Id., 460 U.S. at 10, 103 S.Ct. at 934. The district court referred questions to the ASBCA regarding the nature and type of contract involved here, whether the regulations permit charging the government for additional amounts expended, and the propriety of charging expenses to B & P or IR & D if the contract is ambiguous. The court did not ask for a determination of whether the contractor breached the contract, or if the contractor performed or failed to perform any specific acts or actions whether or not those actions were allowed under the contract. See General Dynamics, 644 F.Supp. at 1508. At first glance, this may appear to be hair-splitting. But it is important to note that the district court did not refer to the ASBCA the ultimate questions at issue in the criminal prosecution.[1] The government lawyers confirmed this in oral arguments. They claimed, as they did in district court, that the referral would not bind the district court because the government could prosecute for a conspiracy or fraud even if General Dynamics' interpretation of the contract was found to be "reasonable" by the ASBCA. Since the issues decided by the ASBCA (and possibly by the Federal Circuit) would not necessarily determine the outcome of the criminal case, we have a case very different from Cone Memorial, in which the Supreme Court determined that the litigants were "effectively out of court" because the state court proceedings would dispose of all issues in the federal court.
 
 C. Temporary Stay
 
 53
 Unlike the stay in Moses, the stay in this case is only temporary. The district court discussed the possibility that delay by the ASBCA would prejudice the prosecution of the criminal case. The judge therefore expressly retained authority to terminate the referral. 644 F.Supp. at 1507.
 
 
 54
 The majority contends that there is no discretion involved in a district court's application of the primary jurisdiction doctrine. See Amended Opinion at note 15. The majority thus holds that the district court was not at liberty to "disinvoke" primary jurisdiction by lifting the stay. See Amended Opinion at note 4. The majority has mischaracterized the nature of the primary jurisdiction doctrine and disregards opinions of this court and others indicating that the application of the doctrine is discretionary. For example, the D.C. Circuit Court of Appeals has stated:
 
 
 55
 The doctrine of primary jurisdiction, despite what the term may imply, does not speak to the jurisdictional power of the federal courts. It simply structures the proceedings as a matter of judicial discretion, so as to engender an 'orderly and sensible coordination of the work of agencies and courts.' We may not now second guess whether the trial judge used his discretion wisely.
 
 
 56
 United States v. Bessemer and Lake Erie R. Co., 717 F.2d 593, 599 (D.C.Cir.1983) (primary jurisdiction question not "jurisdictional" so issue could not be raised on appeal after nolo contendre plea entered). The district court correctly exercised discretion to determine whether the stay pending a ruling from the ASBCA was appropriate. E.g. Northern California District Council of Hod Carriers v. Opinski, 673 F.2d 1074, 1075 (9th Cir.1982) ("district court must exercise its discretion to determine whether proceedings should be stayed" under primary jurisdiction doctrine); I.C.C. v. Big Sky Farmers & Ranchers Marketing Cooperative of Montana, 451 F.2d 511, 515 (9th Cir.1971) (district court did not abuse discretion by refusing to apply primary jurisdiction).[2]
 
 
 57
 The Third Circuit has concluded in a civil case that a stay pending administrative action, where the district court determined to monitor the stay and reconsider its order periodically, was "merely a temporary suspension of the proceedings" and not a final decision. Cheney State College Faculty v. Hufstedler, 703 F.2d 732, 735-36 (3rd Cir.1983). Since the stay was only temporary, it does not have the practical effect of a dismissal: "Nothing in the district court's opinion or order intimates that the stay was intended to 'deep six' the suit. Plaintiffs have not been put 'effectively out of court.' " Id. 703 F.2d at 735.
 
 
 58
 D. Collateral Order Exception to Finality Requirement
 
 
 59
 The main exception to the final order requirement is the Cohen collateral order doctrine. This exception may apply in criminal cases where the appellant can demonstrate satisfaction of the following prerequisites:
 
 
 60
 1. The pretrial order fully disposed of the appellants' claim;
 
 
 61
 2. The appellants' claim is collateral to, and separate from, the principal issue of guilt or innocence; and
 
 
 62
 3. The order involves an important right that would be lost if review had to await final judgment.
 
 
 63
 United States v. Yellow Freight System, Inc., 637 F.2d 1248, 1250-51 (9th Cir.1980) (citing Abney v. United States, 431 U.S. 651, 658-62, 97 S.Ct. 2034, 2039-41, 52 L.Ed.2d 651 (1977)). See also United States v. Harper, 729 F.2d 1216, 1219-20 (9th Cir.1984).
 
 
 64
 The application of this analysis to the present appeal demonstrates that it does not qualify as an appealable collateral order. The government here claims that the district court erred in staying the criminal trial and referring questions of contract interpretation to an administrative tribunal. Although this claim is separable from the principal issue of guilt or innocence, the district court's pretrial order does not fully dispose of the claim, nor does the order preclude review of the district court's decision if the government is forced to wait until final judgment. If the defendants are acquitted on legal rather than evidentiary grounds, the government can appeal.[3] While the government generally alleges that delay resulting from the district court's stay will cause it "irreparable injury warranting review," the government does not allege prejudice to any "important rights" that would be lost if review had to await final judgment. See Yellow Freight Systems, 637 F.2d at 1250-51.
 
 
 65
 The district court in its order filed February 5, 1987 entitled "Order Re Scheduling in Light of Opinion in ASBCA Case No. 33633", acknowledges that Case No. 33633 has been dismissed but notes there is another appeal still pending at ASBCA in Case No. 34051. Judge Fernandez notes that the ASBCA has not ruled on the issue of whether the questions he referred will be addressed in that appeal. He notes further that the Board has not declined to address the court's questions although it could do so. If the Board should so decline, the district court is prepared to lift the stay. The district court's stay order only deferred this matter until ASBCA acts on Case No. 34051 or until this court rules on this appeal.
 
 
 66
 Furthermore, the Supreme Court has admonished that the collateral order doctrine should be applied only with the "utmost strictness" in criminal cases. Flanagan v. United States, 465 U.S. 259, 265, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984). The Flanagan Court noted that it has found only three classes of pretrial criminal orders to satisfy the Cohen requirements: orders involving claims of double jeopardy, excessive bail, and the Speech and Debate Clause of the Constitution. None of these orders involve appeals by the prosecutor.
 
 
 67
 The Flanagan case was analyzed by this court in United States v. Harper, supra, 729 at 1220-21. The Harper decision rejected the criminal defendant's claim that the court should review on appeal the district court's pretrial order holding that the death penalty under the Espionage Act was constitutional. In deciding that the order was not appealable under the Cohen doctrine, the court focused on the effects of the pretrial order, not the merits of the claim:
 
 
 68
 Harper does not argue that the amendment protects him from having to endure a trial for a crime carrying a penalty that may be cruel and unusual. Rather, he asserts that the erroneous order will cause him to undergo much hardship that cannot be corrected on appeal. The Supreme Court precedents require us to focus on the nature of the right asserted by the defendant, not the hardships caused by the order. Thus we believe that this case falls outside the narrow class of criminal cases in which interlocutory appeals are available.
 
 
 69
 Harper, 729 F.2d at 1221. Again, the government has not identified any extraordinary hardship or prejudice to its case that would result from waiting to appeal the primary jurisdiction issue only upon acquittal or other final judgment on the merits.
 
 
 70
 For all of these reasons, I must conclude that this court has no jurisdiction over the government's appeal.
 
 II
 Primary Jurisdiction
 
 71
 If I thought it appropriate to address the merits of this case, I would still dissent from the majority opinion. Its conclusion that the district court erred in applying the doctrine of primary jurisdiction is contrary to United States v. Yellow Freight System, Inc., 762 F.2d 737 (9th Cir.1985), and other authorities which bind this court.
 
 
 72
 The majority sets forth two reasons why primary jurisdiction should not apply in this case. First, the ASBCA is not a "regulatory" agency. Second, deferral in a criminal case raises separation of powers issues that militate against the application of primary jurisdiction.
 
 
 73
 A. Quasi-legislative vs. Quasi-judicial Functions
 
 
 74
 As the majority notes, "[t]here are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." Ricci v. Chicago Mercantile Exch., 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). There is no doubt that the defense industry is heavily regulated and that there is a need for expertise or uniformity in the administration of defense contracts. But the majority is concerned that interpretation of the defense contract in this case has not been placed by Congress within the jurisdiction of an administrative body having regulatory authority.
 
 
 75
 The majority reasons that the critical distinction between this case and cases in which primary jurisdiction applies is that the ASBCA is "quasi-judicial" rather than "regulatory." See Amended Opinion at 1363, n. 13. To the majority, "regulatory" apparently means "quasi-legislative:" the majority attempts to distinguish the NLRB from the ASBCA because the NLRB has rule-making powers to implement policy but the ASBCA only has rule-applying powers. See Amended Opinion note 16.
 
 
 76
 While it is true that primary jurisdiction doctrine is designed to secure a place for administrative power within our legal system, it does not follow that the quasi-legislative function is all that is protected: "Typically, the creation of a new agency means the addition to the legal system of a new lawmaking and law applying authority...." 4 K. Davis, Administrative Law Treatise Sec. 22:1 at 81 (1983).
 
 
 77
 The "law applying function" is just as important to the overall regulation of the defense industry as the promulgation of legislative regulations. As the district court pointed out:
 
 
 78
 [I]t is not amazing to find that the ASBCA plays a significant role in the military procurement process. One does not marvel to hear that the military agencies closely monitor the handling of disputes before the Board, and that "DOD makes changes to bring its acquisition system into compliance with Board decisions." [authorities omitted] Thus, the interpretations of the hierophants who man the ASBCA do, indeed, form an important part of the whole scheme of regulation of the defense industry.
 
 
 79
 Therefore, while it is true that when taken by itself the ASBCA does not necessarily operate in the same fashion as the more traditional administrative agencies, it is certainly embedded in and even rather central to the operation of defense procurement. It performs traditional agency functions. It brings a highly honed and respected expertise to bear on this technical area, and makes authoritative determinations which have the effect of explaining and setting DOD policy for the defense industry.
 
 
 80
 644 F.Supp. at 1505. The majority's conclusion that the ASBCA has "little in common with such bodies as the ICC and the SEC, which have quasi-legislative powers and are actively involved in the administration of regulatory statutes" is thus not compelling. In fact, the Supreme Court has pointed out that it was Congress' intent to make the ASBCA and other Boards of Contract Appeals "the factfinders within their contract area of competence, just as the Interstate Commerce Commission, the Federal Trade Commission, and the National Labor Relations Board are the factfinders for other purposes." United States v. Utah Construction and Mining Co., 384 U.S. 394, 421 n. 18, 86 S.Ct. 1545, 1559-60 n. 18, 16 L.Ed.2d 642 (1966) (quoting with approval Judge Davis' opinion in Utah Construction and Mining Co. v. United States, 168 Ct.Cl. 522, at 541-42, 339 F.2d 606 at 618 (1964)) (emphasis in original).
 
 
 81
 For these reasons, I disagree with the majority's conclusion that the ASBCA has not been "charged with primary responsibility for governmental supervision or control of the particular industry or activity involved."
 
 B. Policy vs. Administration
 
 82
 Perhaps the majority's distinction between quasi-judicial and quasi-legislative administrative powers is really an attempt to articulate a difference between questions of policy from questions of interpretation or administration. Footnote 14 implies that only questions of policy need be referred to the appropriate agency: "However, if a claim brought in district court raised issues of transportation policy, the doctrine of primary jurisdiction requires the parties to air the claim first before the ICC." I agree that this is a valid concern since the reason for deferring to the agencies is to preserve administrative power rather than to provide the district court with special masters for difficult questions involving regulatory agencies. But "administration" and "policy" in some cases become inextricably tied together:
 
 
 83
 Whether the doctrine requires the ICC to pass on the construction of a particular tariff's requirements "depends on whether the question raises issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by the Act." Western Pacific, 352 U.S. at 65, 77 S.Ct. at 166.
 
 
 84
 United States v. Yellow Freight System, Inc., 762 F.2d 737, 739 (9th Cir.1985).
 
 C. Statutory Authority
 
 85
 The majority also argues that 41 U.S.C. Secs. 601-613, the statute authorizing establishment of the ASBCA, does not require primary jurisdiction deferral for issues of defense contract interpretation.
 
 
 86
 First, the Amended Opinion points out that the statute does not require establishment of the ASBCA. It is true that the statute states that the agency may establish a full-time agency board and that if the case load volume is too small for such a board, appeals can be referred to other Contract Boards of Appeals. But the statute also sets forth procedures for making the determination whether a full-time board is necessary:
 
 
 87
 [A]n agency board of contract appeals may be established within an executive agency when the agency head, after consultation with the Administrator, determines from a workload study that the volume of contract claims justifies the establishment of a full-time agency board of at least three members who shall have no other inconsistent duties. Workload studies will be updated at least once every three years and submitted to the Administrator.
 
 
 88
 41 U.S.C. Sec. 607(a)(1) (emphasis added). Workload studies are thus mandatory and a failure to create a board of appeals in light of a workload study recommending would seem to be an abuse of administrative discretion.
 
 
 89
 The fact that defense contract disputes may be referred to other boards of contract appeals if the caseload is insufficient to justify a full-time ASBCA does not support the majority's conclusion that the ASBCA was not intended to "become expert in a particular genre of contract disputes." See Amended Opinion at 1363-64. Although the majority impliedly trivializes the importance of the ASBCA by stating that defense disputes could be heard by other boards of contract appeals, the ASBCA actually has a large caseload and is an important model for the other boards. Utah Construction, 384 U.S. at 408, 86 S.Ct. at 1553.
 
 D. Application to Criminal Cases
 
 90
 The majority's suspicion of primary jurisdiction in this case is "heightened" by the fact that this is a criminal prosecution. Amended Opinion at 1365. I do not believe that staying proceedings under primary jurisdiction affects the prosecutor's independence or discretion in bringing indictments. This court has once before addressed the propriety of applying primary jurisdiction in criminal cases:
 
 
 91
 The government argues that notwithstanding the reasons for deferring to the ICC on this issue, the court should not defer in this case because it is a criminal rather than a civil case. Although we recognize that care must be taken not to delay unnecessarily a criminal prosecution, this is not an ordinary criminal case. Whether the volume tariff applied to Yellow Freight's deviations from the tariff's technicalities is a threshold question of policy which must be decided before the criminal issues can be determined. Thus, it is an appropriate subject for ICC determination pursuant to the primary jurisdiction doctrine.
 
 
 92
 Yellow Freight Systems, 762 F.2d 737. The case before this panel, like that in Yellow Freight Systems, is not an ordinary criminal case. Whether the defense contractor's accounting and claims practices are proper under the DIVAD contract and defense procurement regulations is a threshold question of policy and uniform administration that must be decided before criminal liability may be determined. The majority has determined that the district court must make these initial determinations. The authority of Yellow Freight Systems supports the district court's referral to the ASBCA. I would dismiss the appeal.
 
 
 
 *
 The opinion is amended in order to respond to Judge Brunetti's dissent
 
 
 [1]
 Sec. 605(a) provides in pertinent part:
 All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. The contracting officer shall issue his decision in writing, and shall mail or otherwise furnish a copy of the decision to the contractor.
 41 U.S.C. Sec. 606 provides:
 Within ninety days from the date of receipt of a contracting officer's decision under section 605 of this title, the contractor may appeal such decision to an agency board of contract appeals, as provided in section 607 of this title.
 
 
 [2]
 The district court submitted the following questions to the ASBCA:
 (1) Is the nature of the Contract, which is designated as a firm fixed-price (best efforts) contract, ambiguous in the sense that it can reasonably be construed in more than one way? What are the possible ways?
 (2) Is the nature of the Contract clearly a firm fixed-price contract, or clearly a best efforts contract, or clearly another type of contract--a hybrid of some kind? What type of contract is it?
 (3) Considering the type of contract involved here, was the contractor required to spend any more than the contract price itself toward the accomplishment of the objectives of the Contract?
 (4) If the contractor was not required to spend amounts above the contract price toward accomplishment of the objectives of the Contract, do the regulations governing charges to B & P and IR & D permit the charging of additional amounts expended to accomplish the objectives of the Contract to those accounts?
 (5) If considering the type of contract this was, no expenditures over the Contract price to accomplish the objectives of the Contract were "required," would it have been improper to expend B & P or IR & D funds to accomplish some or all of those objectives?
 (6) If the Contract is ambiguous (see first question) would it have been proper to charge any of the expenses which would accomplish the objectives of the Contract to B & P or IR & D under any of the reasonable constructions of its terms? Which ones?
 (7) Do the regulations regarding the proper charging of expenses clearly require the above answers, or is further construction of the regulations required?
 (8) Considering the type of contract this was, would it have been proper to charge expenses "related to" the work performed under the Contract, although not necessarily "required by it," to the B & P and IR & D accounts?
 (9) Considering the type of contract this was: What was the contractor required to do under the Contract? Was performance of work in excess of the contract price required? Could the Contract reasonably be construed to limit the obligation to the contract price?
 (10) If any of the questions are overlapping the Court would be pleased to have cross-references rather than repetitive answers. In addition, the Court does not intend to unduly limit this referral, so if other questions can and should be posed and answered, the Court would be pleased to receive that information from the Board. Furthermore, if the Board is unable to answer certain questions, it should simply so state.
 United States v. General Dynamics, 644 F.Supp. 1497, 1508 (C.D.Cal.1986).
 
 
 [3]
 Under 41 U.S.C. Sec. 605(c)(5), if the contracting officer fails to issue a decision within the required time period, that failure may be "deemed" a decision so as to permit an appeal to the ASBCA under section 606. A section 606 appeal must be filed within ninety days of the contracting officer's decision; failure to do so deprives the ASBCA of jurisdiction over the appeal. Cosmic Constr. Co. v. United States, 697 F.2d 1389, 1391 (Fed.Cir.1982). Because more than ninety days had elapsed between the time of the contracting officer's letter and the time of the appeal in No. 34051, it appeared to us that the ASBCA might be unable to render a decision on the B & P and IR & D contracts involved in No. 34051 for lack of jurisdiction. After reviewing the supplemental briefing submitted on this issue, however, we are convinced that it is neither necessary nor appropriate at this point for this court to determine the scope of ASBCA jurisdiction over appeals based on section 605(c)(5)
 
 
 [4]
 The dissent argues that this case differs from Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), in that the district court here stated that it might lift the stay if the delay became excessive. See post at 1367; General Dynamics, 644 F.Supp. at 1507. If, however, the primary jurisdiction doctrine was properly invoked, the district court would not be at liberty to "disinvoke" it by lifting the stay. See infra at 1364-65 n. 15. In short, a true primary jurisdiction stay cannot be "temporary." Furthermore, even if the district court could lift such a stay, that fact would not distinguish this case from Moses H. Cone Memorial Hospital. In the latter case, the stay was "tentative" because "it was subject to change on a showing that the state proceedings were being delayed, ... or that some other reason for a change had arisen." Moses H. Cone Memorial Hosp., 460 U.S. at 30, 103 S.Ct. at 944 (Rehnquist, J., dissenting). Where a district court enters a stay that can effectively end the litigation in that court, the court's ability to lift the stay if it chooses would seem to be irrelevant. If the district court does not lift the stay, the litigation before it may be terminated just as conclusively as would be the case if the court stated its intent not to proceed until the collateral proceedings were completed
 
 
 [5]
 General Dynamics would, on the other hand, not be estopped from relitigating issues determined against it in the collateral proceedings because the government would be held to a higher standard of proof in the criminal prosecution. See United States v. Beery, 678 F.2d 856, 862 n. 10 (10th Cir.1982)
 
 
 [6]
 Administrative determinations may be afforded preclusive effect if an agency, acting in a judicial capacity, resolves issues properly before it so long as the parties are afforded an adequate opportunity to litigate. University of Tennessee v. Elliott, --- U.S. ----, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986). In People v. Sims, 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982), the California Supreme Court held that the state, in a criminal fraud prosecution, was precluded from relitigating issues previously determined in an administrative proceeding
 
 
 [7]
 Neither the government nor the district court realized that they could be bound by findings made in the collateral proceedings. See General Dynamics, 644 F.Supp. at 1506. Apparently, neither considered the particular workings of a primary jurisdiction referral in this case or the possible issue preclusive effects of halting the proceedings pending determination of central issues in another forum
 
 
 [8]
 "[T]he decision of the ASBCA on the proper construction of the regulations and the proper meaning of the language of the Contract, may well resolve issues that will allow this court to dispose of all or a major portion of the case before it." General Dynamics Corp., 644 F.Supp. at 1506
 
 
 [9]
 See supra at 1359 n. 2, questions 4, 5, 6 & 8
 
 
 [10]
 It is possible, of course, that a determination by the ASBCA would not terminate the criminal proceedings. Determinations favorable to the government could occur, or the agency could fail to address adequately all issues of contract or regulatory interpretation. The dissent seems to assume that there must be no doubt that a party is effectively out of court before an order may be deemed final. See post at 1369. However, cases decided subsequent to Moses H. Cone Memorial Hospital do not require absolute certainty as to the loss of the desired forum. See National R.R. Passenger Corp. v. Providence & W.R.R. Co., 798 F.2d 8, 12 (1st Cir.1986) (stating, in case where stay was found to be an appealable final order, "[i]f after the state condemnation proceeding is completed, there are any issues in [plaintiff's] complaint remaining to be resolved ..., [the district court] may take them up at that time); Silberkleit v. Kantrowitz, 713 F.2d 433, 434 (9th Cir.1983) (finding stay appealable where state court action involved "similar issues" and collateral estoppel would "resolve or limit the issues to be decided in federal court") (emphasis added)
 
 
 [11]
 Because this court has appellate jurisdiction, we need not pass on the Government's alternate request for a writ of mandamus. See Silberkleit v. Kantrowitz, 713 F.2d 433, 434 n. 1 (9th Cir.1983)
 
 
 [12]
 See, e.g., Ricci v. Chicago Mercantile Exch., 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); United States v. Western Pac. R.R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); United States v. Pacific & A. Ry. & Navigation Co., 228 U.S. 87, 33 S.Ct. 443, 57 L.Ed. 742 (1913); United States v. Yellow Freight Sys., 762 F.2d 737 (9th Cir.1985)
 
 
 [13]
 The importance of ensuring Congressional intent to place the initial consideration of an issue with an agency before finding that judicial deferral is warranted is made clear by the fact that
 [t]he doctrine of primary jurisdiction ... does "more than prescribe the mere procedural time table of the lawsuit. It is a doctrine allocating the lawmaking power over certain aspects" of commercial relations. "It transfers from court to agency the power to determine" some of the incidents of such relationships.
 Western Pac. R.R., 352 U.S. at 65, 77 S.Ct. at 166 (quoting Jaffe, Primary Jurisdiction Doctrine Reconsidered, 102 U.Pa.L.Rev. 577, 583-84 (1954)). In some cases, as here, see supra at 1360, the referring court has no authority to review the agency's determination. See Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 69-71, 91 S.Ct. 203, 208-09, 27 L.Ed.2d 203 (1970). Thus, given that the primary jurisdiction doctrine is in effect, a power-allocating mechanism, a court must not employ the doctrine unless the particular division of power was intended by Congress.
 A comparison of the district court's formulation of the scope of the primary jurisdiction doctrine in this case with the Supreme Court's formulation is revealing. The district court would require only that the administrative body have competence "to consider an issue" while the Supreme Court would have the primary jurisdiction doctrine come "into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." Western Pac. R.R., 352 U.S. at 64, 77 S.Ct. at 165 (emphasis added). The distinction can be illustrated with a homely example: If a canner sued a grower for delivering undersized asparagus and there existed an agency empowered to establish size guidelines for asparagus, the issue of undersized asparagus would be one placed within the competence of the agency. If, on the other hand, Congress merely provided a forum for canner/grower disputes without giving the decisionmaker the authority to implement a scheme for regulating growers, only the adjudication of the issue would be vested in that body.
 
 
 [14]
 Compare this to the situation described in ICC v. Atlantic Coast Line Railroad, 383 U.S. 576, 579-80, 86 S.Ct. 1000, 1003-04, 16 L.Ed.2d 109 (1966): Under the Interstate Commerce Act, a reparation claim could be brought by complaint to the ICC or by suit in federal district court. However, if a claim brought in district court raised issues of transportation policy, the doctrine of primary jurisdiction required the parties to litigate the claim first before the ICC. The legislative history of the CDA indicates that Congress thought about, and rejected, a requirement of routing cases through the boards of contract appeals before allowing judicial proceedings. S.Rep. No. 1118, 95th Cong., 2d Sess. 5-6, reprinted in 1978 U.S.Code Cong. & Ad.News 5239-40
 
 
 [15]
 The district court apparently thought that there is an element of discretion in the use of the primary jurisdiction doctrine. Recognizing that "this is a criminal prosecution and care must be taken to see that it is not delayed excessively," the court stated that it would "retain authority to terminate the referral if that becomes necessary." General Dynamics, 644 F.Supp. at 1507. As we read the cases, however, an issue either is within an agency's primary jurisdiction or it is not, and, if it is, a court may not act until the agency has made the initial determination. Failure to defer when the doctrine so mandates is reversible error, see, e.g., Yellow Freight Sys., 762 F.2d at 741, as is deferral in inappropriate situations, see Nader v. Allegheny Airlines, 426 U.S. 290, 307, 96 S.Ct. 1978, 1988, 48 L.Ed.2d 643 (1976)
 The dissent asserts that application of the primary jurisdiction doctrine is discretionary. See post at 1369. In discussing the doctrine, the Supreme Court frequently has used language at odds with the notion of discretionary application. See, e.g., United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963) (primary jurisdiction doctrine "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme") (emphasis added); United States v. RCA, 358 U.S. 334, 346, 79 S.Ct. 457, 464, 3 L.Ed.2d 354 (1959) (reaching "the question whether ... the over-all regulatory scheme of the Act requires invocation of the primary jurisdiction doctrine") (emphasis added): Great N. Ry. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922) ("Whenever a rate rule or practice is attacked as unreasonable or unjustly discriminatory, there must be preliminary resort to the commission") (emphasis added).
 The cases from this court on which the dissent relies, although admittedly containing some ambiguous language, essentially do not support the assertion that the matter is one of discretion. In Northern California District Council of Hod Carriers v. Opinski, 673 F.2d 1074, 1075 (9th Cir.1982), the court did state that "the district court must exercise its discretion to determine whether proceedings should be stayed," but it also declared that "[a]ppropriate deference to the jurisdiction and expertise of the agency will often require a stay of judicial proceedings." Id. (emphasis added). It is unclear how a primary jurisdiction stay could be both required and discretionary. Farley Transportation Co. v. Santa Fe Trail Transportation Co., 778 F.2d 1365, 1370 (9th Cir.1985) (citing Yellow Freight Sys., 762 F.2d at 739) states unequivocally that application of the primary jurisdiction doctrine is a question of law, reviewed de novo. The dissent mischaracterizes ICC v. Big Sky Farmers & Ranchers Marketing Cooperative, 451 F.2d 511, 515 (9th Cir.1971), as holding that the "district court did not abuse its discretion by refusing to apply primary jurisdiction." See post at 1369. In fact, the Big Sky court did not apply an abuse of discretion standard to the primary jurisdiction issue in that case; it simply found the doctrine inapplicable. Id. What this court did review for an abuse of discretion in Big Sky was the district court's grant of injunctive relief.
 
 
 [16]
 A policy-implementing agency can, of course, choose to carry out its work by case-by-case adjudication rather than through general rulemaking. This is the method used by the National Labor Relations Board. What distinguishes the ASBCA from the NLRB is the fact that the NLRB is vested with the power to administer the regulatory scheme laid out in the federal labor laws, while no similar authority has been given to the ASBCA
 
 
 [17]
 Obviously, the most serious interference is the possibility that issues central to the criminal prosecution will be determined in another forum. It is also worth noting that at least one court has described the use of ASBCA referrals as "tactics used by defendants to delay resolution of this and related cases for ... years." United States v. Titan Pacific Constr. Corp., 637 F.Supp. 1556, 1562 (W.D.Wash.1986) (footnote omitted). The Titan Pacific court found that waiting for an ASBCA determination was not unlike "waiting for Godot." Id. at 1563
 
 
 [18]
 In Operating Engineers, the issue was whether the government had to exhaust an administrative remedy before the Federal Election Commission prior to bringing an indictment under the Federal Election Campaign Act, 2 U.S.C. Secs. 431-56. For all practical purposes, there is no difference between requiring exhaustion of and requiring deferral to an administrative remedy. In either case there can be no litigation before the agency has acted
 
 
 [1]
 The seven count indictment alleges a conspiracy to defraud the government of money and making false statements to the government in violation of 18 U.S.C. Secs. 2 and 1001 for the purpose of obtaining the money for General Dynamics. E.R. at 1-31. While Judge Fernandez referred the question of whether General Dynamics' claim for payment was proper under the DIVAD contract, he did not refer questions of fraud, conspiracy, falsification of statements, or criminal intent
 
 
 [2]
 Other jurisdictions agree. See Columbia Gas Transmission v. Allied Chemical Corp., 652 F.2d 503, 519, n. 14 (5th Cir.1981) (primary jurisdiction is "discretionary tool of the courts"); Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 622 F.2d 216, 235, n. 30 (6th Cir.1980) (primary jurisdiction permits a court, in the exercise of its sound discretion, to defer to an administrative agency for the initial resolution of certain disputes); Lodge 1858, American Federation of Government Employees v. Webb, 580 F.2d 496, 508-09 (D.C.Cir.1978) (primary jurisdiction exercised in district court's discretion); Deaktor v. Schreiber & Co., 479 F.2d 529, 535 (7th Cir.1973) (concurrence) (issue is whether district court abused its discretion by refusing to defer questions under primary jurisdiction doctrine); Outboard Marine Corp. v. Pezetel, 535 F.Supp. 248, 256 (D.Delaware 1982) (court may, in its discretion, deny stay when primary jurisdiction is otherwise available); Atlantic Coast Line Railroad Co. v. Riss & Co., 267 F.2d 659, 660 (D.C.Cir.), cert. denied, 361 U.S. 804, 80 S.Ct. 108, 4 L.Ed.2d 57 (1959) (primary jurisdiction determination requires "exercise of discretion" of court); International Telephone and Telegraph Corp. v. General Telephone & Electronics Corp., 449 F.Supp. 1158, 1169 (D.Hawaii 1978) (question is whether court should, in its discretion, defer a factual question to the FCC under the primary jurisdiction doctrine); Shearson Hayden Stone, Inc. v. Lumber Merchants, Inc., 423 F.Supp. 559, 560-61 (S.D.Florida 1976) (primary jurisdiction discretionary)
 
 
 [3]
 18 U.S.C. Sec. 3731 lists specific instances in which the government can appeal in criminal cases. The courts have uniformly construed Sec. 3731's list of appealable orders as nonexclusive. Thus, the "government may appeal under the authority of Section 3731, except when doing so would be prohibited by the Constitution." United States v. Edmonson, 792 F.2d 1492, 1496 (9th Cir.1986). The Constitution's Double Jeopardy Clause bars appeals from an acquittal only if the court "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." United States v. Schwartz, 785 F.2d 673, 677 (9th Cir.1986) (citing United States v. Martin Linen Supply Co., 430 U.S. 564, 572, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977)). Interpretation of contracts would be a legal question from which the government could appeal: any "acquittal" based on an erroneous legal interpretation would in effect be a dismissal from which the government may appeal. See Schwartz, 785 F.2d at 677