**DIGITAL COMMUNICATIONS
NETWORK, INC., et al.,
Plaintiffs,**

v.

**AT & T WIRELESS SERVICES,
and AirTouch Cellular, Inc.,
Defendants.**

**No. CV 99–05418 CM.**

United States District Court,
C.D. California.

July 9, 1999.

Katten Muchin & Zavis, Alan D. Croll, Thomas S. Mahr, Steven S. Fleischman, Los Angeles, CA, for AirTouch Cellular, defendant.

McCutchen, Doyle, Brown & Enersen, LLP, John C. Morrissey, Christopher B. Hockett, Deborah A. Nolan, Los Angeles, CA, for AB Cellular Holding, LLC, dba AT & T Wireless Service, defendant.

Mitchell Silberberg & Knupp, LLP, Robert C. Welsh, A. Catherine Norian, Brent Rebowsky, Los Angeles, CA, for Digital Communications, et al., plaintiffs.

## ORDER GRANTING REFERRAL TO THE FEDERAL COMMUNICATIONS COMMISSION AND IMPOSING A STAY ON RELATED PROCEEDINGS

MORENO, District Judge.

On June 21, 1999, two motions came on for regular hearing before this Court: Plaintiffs' motion for a preliminary injunction; and Defendants' cross motion for referral of this action to the Federal Communications Commission. Having considered the moving, opposition, and reply papers, along with all admissible evidence and argument offered in relation to each motion, the Court has determined that the action shall be referred to the FCC under the doctrine of primary jurisdiction.

Plaintiffs are California corporations whose principal business is the resale of cellular telephone service as well as the sale of cellular telephone equipment. Defendants hold FCC cellular radio licenses and as such, are authorized to provide commercial mobile radio services ("CMRS") using their own network on licensed radio frequencies within the geographic areas specified in the licenses. Plaintiffs resell CMRS offered by licensed carriers such as AirTouch.[1] As resellers, Plaintiffs purchase telephone numbers, cellular telephone services, and equipment from Defendants for their own accounts and thereafter sell cellular telephone services and equipment to individual and corporate customers.

In or about March 1999, defendant AT & T began offering to customers in the Los Angeles area a "one rate" plan, which permits cellular telephone users to call nationwide at fixed monthly prices. Apparently, AT & T's one rate plans are attractive to consumers because they eliminate all so-called 'roaming' charges applicable to the allotted number of minutes of cellular telephone usage provided under each plan. However, according to Plaintiffs, these "one rate" plans are not made available to resellers at wholesale rates; and Plaintiffs allege that they have lost a number of customers as a result.

---

1. The FCC defines "resale" as "activity in which one entity (the reseller) subscribes to the communications services or facilities of a facilities-based provider and then reoffers communications services to the public (with or without 'adding value' for profit.") *Interconnection and Resale Obligations Pertaining to Commercial Mobile Radio Services,* CC Docket No. 54, First Report and Order, 11 F.C.C.R. 18455, 18457 ¶ 3 (1996) ("CMRS Resale Order").

During the week of May 17, 1999, Plaintiffs learned that defendant AirTouch also planned to offer its own version of a "one rate" plan to the public, and inquired whether these plans would be offered at wholesale rates. AirTouch responded by allegedly noting that its "one rate" plans were not going to be offered to resellers under any terms. *Complaint* at ¶ 19–20.

The crux of the complaint alleges that Defendants are required to offer them discounted rates on these plans pursuant to FCC and California Public Utilities Commission ("CPUC") laws and regulations. Believing that the "one rate" plans will be "especially devastating" to their businesses and customer base, Plaintiffs filed a complaint in federal court, asserting that AT & T and AirTouch have engaged in unjust and unreasonable practices in violation of Sections 201(a), (b) and 202(a) of the Federal Communications Act of 1934 (the "Act"), *as amended*, 47 U.S.C. §§ 201, 202.[2] Complaint at ¶ ¶ 11–12, 31–32. Specifically, Plaintiffs claim that AirTouch violated: (a) 47 U.S.C. § 201(a) by refusing to offer "resale versions of the 'one rate' programs offered to consumers;" (b) 47 U.S.C. § 201(b) by engaging in unjust and unreasonable practices; and (c) 47 U.S.C. § 202(a) by unjustly and unreasonably discriminating against Plaintiffs. In addition to the loss of prospective business, Plain-tiffs allege that they will also incur out-of-pocket expenses in the form of so-called "termination fees" charged by AirTouch to terminate the cellular telephone service provided to the customers who leave Plaintiffs and sign up directly with AirTouch. Consequently, the Complaint seeks, among other things, injunctive relief and damages in an unspecified amount. Plaintiffs also allege causes of action based upon the California Business and Professions Code § 17200, unfair competition and intentional interference with economic advantage.

The same day that Plaintiffs filed their complaint in federal court, they also filed an ex parte application for a temporary restraining order seeking to prohibit AirTouch from, inter alia, offering its "One Rate" pricing plans to the general public "without at the same time extending to Plaintiffs resale versions of such programs at wholesale prices." *Plaintiffs' Proposed Order re Temporary Restraining Order* ¶ a (emphasis added). On May 26, 1999, the Court denied Plaintiffs' ex parte application for a temporary restraining order and an order to·show cause re: preliminary injunction, and set the motion for regular hearing on June 21, 1999. Defendants also filed a separate motion for referral to the FCC, primarily contending that issues relating to the reasonableness of common carrier practices, such as those

---

**2.** *Section 201, entitled "Service and charges,"* reads, in pertinent part:

(a) It shall be the duty of every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request therefor; and, in accordance with the orders of the Commission, in cases where the Commission, after opportunity for hearing, finds such action necessary or desirable in the public interest, to establish physical connections with other carriers, to establish through routes and charges applicable thereto and the divisions of such charges, and to establish and provide facilities and regulations for operating such through routes.

(b) All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful ... The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.

*Section 202(a), "Discriminations and preferences,"* reads:

(a) Charges, services, etc. It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

raised in the Complaint, must be referred to the FCC under the doctrine of primary jurisdiction. The Court will address the primary jurisdiction issue in greater detail below.

## II.

### Applicable Standard

■ The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." Primary jurisdiction

applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

United States v. Western Pacific Railway, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Primary jurisdiction is appropriate when conduct that is the subject of litigation is "at least arguably protected or prohibited by ... [a] regulatory statute," and agency resolution of an issue is likely to be a "material aid" to any judicial resolution. Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 302, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). The classic articulation of the policy directives animating the principle was set forth by Justice Frankfurter in Far East Conference v. United States, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952):

The Court thus applied a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring

the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

■ Within the Ninth Circuit, application of the primary jurisdiction doctrine is dictated when the following four factors are present:

(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.

Cost Management Services v. Washington Natural Gas Co., 99 F.3d 937, 949 (9th Cir.1996), quoting United States v. General Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir.1987).[3]

## III.

### Analysis and Conclusions

Because Defendants refuse to make its "one rate" plans available to Plaintiffs at a wholesale rate, Plaintiffs argue that Defendants have violated both FCC and CPUC policies. Predictably, the dispute raises

**3.** The First Circuit uses a slightly different formulation in determining whether to defer to an administrative agency: (1) whether the determination is at the heart of the task assigned to the agency by Congress; (2) whether agency expertise is required to unravel intricate, technical facts; and (3) whether the agency determination would materially aid the court. New England Legal Found. v. Mass. Port Auth., 883 F.2d 157, 172 (1st Cir. 1989).

the difficult question of whether or not Defendants' may be compelled to issue wholesale rates. In analyzing this question, the Court is guided by the analysis provided by both the CPUC and the FCC on this topic. The first question to be answered, therefore, is whether this issue lies within the jurisdiction of the CPUC, the FCC, or the courts.

■ As a threshold issue, the Court finds that the CPUC lacks subject matter jurisdiction over this dispute because it arguably involves ratemaking, an activity from which the Commission has been preempted. In *In re Mobile Telephone Services and Wireless Communications,* handed down in 1996, the CPUC clarified the nature, scope and extent of its jurisdiction over CMRS providers in light of federal regulations prohibiting states from regulating the rates and market entry of CMRS providers. The CPUC specifically addressed the issue of enforcement of reseller margins, arguably at issue in this case, and it is instructive to quote its findings at length:

> Regarding the dispute over whether enforcement of reseller margins constitute rate regulation, we believe that strong arguments have been presented on both sides of the question. On the one hand, the Budget Act provides that 'no state . . . shall have any authority to regulate . . . the rates charged by any commercial mobile service.' (47 U.S.C. 332(c)(3)(A).) On the other hand, the legislative history provides that states may impose a 'requirement that carriers make capacity available on a wholesale basis.' (House Report No. 103–111 at 261.) This point was elaborated on by the House Subcommittee Chairman, Congressman Markey, who said: '[T]he intent [of the Budget Act] is not to disturb the principle that carriers can be obligated to offer services to resellers at wholesale prices.' (May 6, 1993 statement of Congressman Markey.) Moreover, the FCC has said that a state's 'review of contractual agreements between two or more CMRS providers, including interconnection agreements and roaming agreements entered into by CMRS providers, also falls within the 'other terms and conditions' language of section 332(c)(3) to the extent that such review does not directly affect enduser rates. (Ohio Order, P 43.) Under this language, it could be argued that states may continue to regulate the rates charged by a wholesale CMRS provider to a reseller CMRS provider, so long as there is no 'direct' effect on the rates charged to the ultimate consumer. It could further be argued that this language applies to the maintenance of the reseller margin (the discount off of its retail rates that a facilities-based cellular provider must give to resellers), since this does not directly regulate the rates that either the facilities-based carrier or the reseller charges the ultimate consumer.

> However, the express language of the statute provides that states may not 'regulate' rates. While the matter is not entirely free from doubt, in our view this statutory language prohibits this Commission from setting a particular numerical margin that must be provided to cellular resellers. By requiring that a particular numerical margin be maintained, we would effectively be prescribing the maximum rate that a facilities-based cellular carrier could charge a reseller (without also changing its retail rate). We believe that such action would amount to a regulation of the rates of the facilities-based carrier, and therefore is preempted. The reseller margin is not required by any state statute, but only by Commission decision. We, therefore, no longer require the maintenance of any Commission-specified margin.

> We are therefore faced with two conclusions that are not congruent. On one hand, we have determined that we retain the authority to require that bundled and unbundled wholesale service be of-

fered in California. On the other hand, we have concluded that federal law is intended to preempt us from setting a particular wholesale margin, whether bundled or unbundled. Thus, a cellular carrier could technically comply with the requirement to offer wholesale service, but set the wholesale margin so low as to be practically meaningless. While a cellular reseller may find the wholesale margins offered by the cellular carrier to be too low to make resale competition economically feasible, we would have no authority to find the amount of the wholesale margin unreasonable or to require any specific wholesale rate adjustment. In light of the latter conclusion, we shall forbear from requiring facilities-based cellular carriers to file wholesale tariffs (whether bundled or unbundled) ... If competing cellular resellers find that the rates they will now face are not reasonable, their recourse will be with the FCC, Congress, or the courts. *Id.* Therefore, it appears that the CPUC is not the proper body to govern this dispute. Indeed, this analysis was bolstered by later decisions handed down by the CPUC, specifically *California Wireless Resellers Association vs. Los Angeles Cellular Telephone Company and AirTouch Cellular,* Case No. 98–06–055 (November 5, 1998) and the case of *Nova Cellular West v. AirTouch Cellular,* Case No. 98–09–037, 1998 WL 1013098 (Cal.P.U.C., September 3, 1998).[4]

▮ The question, therefore, is whether the FCC or the courts should properly entertain this question instead. The FCC is charged with "the duty of prescribing just and reasonable charges, practices, classifications and regulations regarding such services, in the event those adopted by a carrier are found to be unreasonable or otherwise in violation of the FCA ... Under the FCA, the FCC has the authority not only to determine the reasonableness of rates and practices, but also to grant relief to those victimized by unreasonable rates and practices." *AT & T Corp. v. PAB, Inc.,* 935 F.Supp. 584, 590 (E.D.Pa.1996) (citations omitted). Therefore, claims which require FCC expertise or uniformity and the establishment of national policy are consistently stayed pending the resolution of relevant issues before the FCC. *Id.*

The primary argument weighing in favor of referral to the FCC is that longstanding case law has dictated that issues of reasonableness are to be determined by federal agencies like the FCC. The complaint alleges that AirTouch violated Sections 201(a), 201(b) and 202(a) of the Communications Act in its dealings with Plaintiffs. *See* Complaint at ¶¶ 31–32. Section 201(a) provides that it is the duty of every common carrier engaged in interstate communication by radio "to furnish such communications service upon *reasonable request* therefor...." 47 U.S.C. § 201(a) (emphasis added). Section 201(b) provides that "charges, practices, classifications, and regulations for and in connection with [interstate] communication services, *shall be*

4. In *California Wireless,* the CPUC confronted a plaintiff who argued that facilities-based cellular providers were obligated to make certain services available on a wholesale basis. Much like the plaintiffs in this case, they argued that the Commission was not precluded from regulating terms and conditions that may relate to rates, and that it was indeed possible for the Commission to require wholesale terms for certain services without setting particular dollar amounts. The Commission found that it lacked subject matter jurisdiction to entertain disputes regarding the level or reasonableness of any rates, and therefore could not actually *establish* wholesale rates.

*Id.* Similarly, in *Nova Cellular,* the Commission dismissed a complaint for lack of jurisdiction involving a plaintiff alleging that a wholesale rate failed to reflect certain cost savings realized by the defendant. Even though the plaintiff attempted to characterize the issue as a "billing" dispute, the Commission concluded that the plaintiff's requested solution inevitably would involve "ratemaking for cellular telephone services, an activity in which the Commission has been preempted." *Id. at* *3. Indeed, *Nova Cellular* stands for the proposition that the Commission lacks jurisdiction regarding the lawfulness of rates charged by cellular carriers. *Id* at *2.

*just and reasonable ...."* 47 U.S.C. § 201(b) (emphasis added). Section 202(a) also provides that "[i]t shall be unlawful for any common carrier to make any *unjust or unreasonable* discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communications services." 47 U.S.C. § 202(a) (emphasis added). As the D.C. Circuit observed, "[t]he generality of these terms—unfair, undue, unreasonable, unjust—opens a rather large area for the free play of agency discretion, limited of course by the familiar 'arbitrary' and 'capricious' standard...." *Bell Atlantic Telephone Co. v. FCC,* 79 F.3d 1195, 1202 (D.C.Cir.1996).

It is resoundingly clear from the face of the Complaint that the issue to be decided incorporates a standard of reasonableness in addition to statutory interpretation. Plaintiffs have clearly put the issue of "reasonableness" on the table before the Court. *See* Opposition at 6 n 4 ("Tellingly, AirTouch not only fails to address the FCC's standards for guiding application of its policy on resale, but it also fails to make any showing that its outright refusal to provide Plaintiffs with a wholesale version of its one-rate plans is reasonable."). "[T]here is no doubt that a determination of the reasonableness or discriminatory nature of common carrier rules and charges is squarely at the heart of the FCC's mandate." *American Telephone and Telegraph Co. v. IMR Capital Corp.,* 888 F.Supp. 221, 244 (D.Mass.1995) (citations from the First, Second, Sixth, Seventh Circuits and a host of district courts omitted). "The Ninth Circuit has recognized that similar issues of reasonableness implicate primary jurisdiction." *Excellular Incorporated v. U.S. West New Vector Group, Inc.,* C 96–1514 Z, Exhibit C at 85,

87, citing *Hargrave v. Freight Distribution Service, Inc.,* 53 F.3d 1019, 1021 (9th Cir. 1995). *See also, Air Transport Association v. Public Utilities Commission,* 833 F.2d 200, 206 n. 7 (9th Cir.1987), *cert denied,* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988) ("Although contentions that a regulation or practice is unlawful because unreasonable should generally be referred to the FCC under the doctrine of primary jurisdiction, referral is not required where the issue to be decided is a question of law." (citation omitted)) and *Pacific Telephone and Telegraph Company v. MCI,* 649 F.2d 1315, 1318 (9th Cir. 1981) (applying the doctrine of primary jurisdiction because "the unlawful act alleged by MCI is a violation of the Communications Act and relates specifically to the 'reasonableness' of the refusal to provide the service." *Id* at 1320).[5]

Even aside from the FCA provisions, the specific administrative rule by the FCC regarding resale services, 47 C.F.R. § 20.12, further incorporates the reasonableness standard. This rule requires facilities-based cellular telephone service providers to "permit unrestricted resale of its service." 47 C.F.R. § 20.12.[6] The rule, however, "has been interpreted by the FCC in a resale order which provides that carriers are prohibited from *unreasonably* restricting the resale of their services, and no carrier may offer like communications services to a reseller at less favorable prices, terms or conditions than are available as similarly situated customers, absent reasonable justification." *City Wide Cellular, Inc. v. Detroit Cellular Telephone company, et al.,* 98–CV–132 (W.D.Mich.1999) at 6, Exhibit B attached to Defendant AirTouch's Reply at 6, citing 11 FCCRcd 18455, 18462 at ¶ 12 (emphasis

---

5. *See also In re Long Distance Telecommunications Litigation,* 831 F.2d 627, 631 (1987) (finding that when the Communications Act speaks in terms of reasonableness, and the plaintiff charges that the defendant engaged in unreasonable practices, Congress has placed resolution of this dispute under the auspices of the FCC).

6. Section 20.12, titled "Resale and roaming," provides in pertinent part, "each carrier subject to this section must permit unrestricted resale of its service."

added). Indeed, the FCC's discussion of this rule is particularly instructive in determining whether the FCC properly retains jurisdiction over this dispute:

It is important to clarify what the resale rule we adopt in this Order does and does not entail. Specifically, the rule does not require providers to structure their operations or offerings in any particular way, such as to promote resale, or adopt wholesale/retail business structures, or establish a margin for resellers, or guarantee resellers a profit. Rather, the rule has two relatively straightforward aspects. First, no provider may offer like communications services to resellers at less favorable prices, terms, or conditions than are available to other similarly situated customers, absent reasonable justification. Second, no provider may directly or indirectly restrict resale in a manner that is unreasonable in light of the policies stated here. Under this aspect of the rule, an explicit ban on resale is unlawful, as are practices that effectively (i.e. indirectly restrict resale, unless they are justified as reasonable).

*Id* at 14–15. Following these precepts, the issues raised in the complaint are whether: (1) Defendants offered like communications services to resellers at less favorable prices, terms or conditions than are available to other similarly situated customers, absent reasonable justification; and (2) Defendants directly or indirectly restricted resale in a manner that is unreasonable in light of FCC policies. *Excellular*, Exhibit C at 2, citing *Interconnection and Resale Obligations Pertaining to Commercial Mobile Radio Services*, 11 FCC Rec 18455, 18462 (1996).

Moreover, the question of whether Defendants may be compelled to offer wholesale rates specifically involves the FCC's expertise. To prevail on its Communications Act/FCC CMRS policy claims, Plaintiffs must at a minimum establish that (a) they were denied a service made available to another AT & T/AirTouch customer, (b) they are "similarly situated" to the other

customer, and (c) the service at issue is a "like communications service." Even then, AT & T/AirTouch can only be found to have violated the CMRS policy if it is unable to provide a "reasonable justification" for distinguishing Plaintiffs from similarly situated customers. The answers to these questions lie within the domain of the FCC. The reasonableness of a carrier's resale practices must be judged on the unique circumstances in each case, including the market conditions facing the carrier. *See* CMRS Resale Order, 11 FCCRcd at 18462:

Neither the language of the Communications Act nor relevant precedent establishes that any restriction on resale or discrimination against resellers necessarily violates Section 201 or 202.... [U]nder different conditions, the costs of a resale rule might outweigh the benefits, and that resale restrictions in a particular market would not necessarily be unjust and unreasonable in violation of the Act or the public interest. In particular, as markets become more competitive, the benefits to be attained through a resale rule generally diminish because carriers have less opportunity and incentive anticompetitively to restrict resale. At the same time, the resale rule, like all regulation, necessarily implicates costs, including administrative costs, which should not be imposed unless clearly warranted. We therefore conclude that our resale rule should be narrowly tailored to apply only to those services where, due to competitive conditions, its application will confer important benefits, and only for so long as competitive conditions continue to render application of the resale rule necessary.

*Id* at ¶ 14–15. Where the resolution of a case hinges on "matters uniquely within the expertise and experience of an agency such as matters turning on an assessment of industry conditions," referral is particularly appropriate. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct.

1978, 48 L.Ed.2d 643 (1976). As the Ninth Circuit noted in *Phonetele, Inc. v. American Telephone and Telegraph Company,* 664 F.2d 716, 722 (9th Cir.1981) in a discussion of Section 201(b) and 202:

> Free competition is not irrelevant to the objectives of utility regulation, but determinations of whether a company's practice are in the public interest as defined by the Act require FCC consideration of factors other than competition. Such factors include network safety and efficiency, the need of the public for reliable service at reasonable rates, the proper allocation of the rate burden, the financial integrity of the carriers, and the future needs of both users and carriers.

Plaintiffs Opposition argues that the doctrine of primary Jurisdiction does not apply because the FCC has already made a determination in favor of the plaintiff, and cites *Cost Management Services, Inc. v. Washington Natural Gas Company,* 99 F.3d 937, 949 (9th Cir.1996) for the proposition that the primary jurisdiction doctrine is inapplicable where threshold questions are resolved in plaintiff's favor. But *Cost Management* resolved its "threshold question" involving tariffs in favor of the plaintiff because the case involved a motion to dismiss, where allegations of the plaintiff are taken as true. Indeed, its Opposition confirms that they are seeking rate-based relief from the Court, rather than the FCC, which further contravenes the principle of primary jurisdiction.

Finally, the case must be referred to the FCC for policy reasons. The Court finds that the determinations presented require the FCC's expertise, skill, and ability to resolve the dispute. It bears noting that "[r]eferral to the FCC would secure '[u]niformity and consistency in the regulation of business entrusted to [the FCC]' and would promote 'a uniform and expert administration of the regulatory scheme laid down by the Act.' " *AT & T Corporation v. Ameritech Corporation,* 1998 WL 325242 at *2 (N.D.Ill. June 10, 1998), quoting *U.S.*

*v. Western Pacific Railroad Company,* 352 U.S. 59, 64–65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

In sum, it is clear that the administration of justice favors referral in this case. Obtaining the views of the FCC would be instrumental to the Court in reaching its decision. Indeed, rendering a decision without the benefit of the FCC's interpretation of the term "reasonable" would be counterproductive and ultimately disservice those who have an interest (or a potential interest) in this dispute. *See AT & T Corporation v. Ameritech Corporation,* 1998 WL 325242 at *3:

> Referring a case to an agency simply allows the court to consider the agency's views when rendering its decision; it does not shift the power to determine a federal lawsuit to an administrative agency. *See City of Peoria v. General Electric Cablevision Corporation,* 690 F.2d at 120 (primary jurisdiction doctrine enables "the agency to make a record and a decision on a matter before courts put their oar in"); *Johnson v. Artim Transportation System, Inc.,* 826 F.2d 538, 548 (7th Cir.1987) (primary jurisdiction doctrine does not affect court's power to consider a case); *Foremost Int'l Tours, Inc. v. Qantas Airways Ltd.,* 525 F.2d 281, 287 (9th Cir. 1975) ("[t]he court has the last word but it can properly seek the benefit of whatever contributions can be made by an agency whose 'area of specialization' embraces problems similar to or intermeshed with those presented to the court").

■ Finally, the Court denies Plaintiffs request for a preliminary injunction. Although the doctrine of primary jurisdiction does not deprive the court of the power to order injunctive relief, *see Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade,* 412 U.S. 800, 820, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973), the Court prefers to refer the matter in its entirety to the FCC. "[C]ourts should generally avoid expressing a view on the merits

when referring a case to an agency under the primary jurisdiction doctrine." *AT & T Corporation v. Ameritech Corporation*, 1998 WL 325242 at *5. Indeed, the FCC has the authority to order injunctive relief should it see fit. *See* 47 § 154(i) and *U.S. v. Southwestern Cable Co.*, 392 U.S. 157, 181, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968). "In essence, a decision to defer consideration of the plaintiffs' request for a preliminary injunction simply shifts the initial consideration of that request to the FCC, if the plaintiffs renew their request for an injunction before the agency. As the FCC is uniquely situated to render a decision on the plaintiffs' likelihood of success on the merits, allowing the FCC to consider the plaintiffs' request comports with the systemic concerns supporting a referral under the primary jurisdiction doctrine." *See AT & T Corporation v. Ameritech Corporation*, 1998 WL 325242 at *3.[7] Indeed, in that very case, *AT & T Corporation v. Ameritech Corporation*, the FCC issued interim relief in the form of a standstill order. *See id*, FCC 98–141 (June 30, 1998).

### IV.

### *Conclusion*

■ A court enjoys the discretion to stay proceedings and retain jurisdiction pending determination by an administrative agency pursuant to the doctrine of primary jurisdiction; or to dismiss the case without prejudice. *See AT & T Corporation v. Ameritech Corporation*, 1998 WL 325242 at *6.

Because the complaint in primarily concerned with the Communications Act, the FCC's rules, and the FCC's policies concerning resale of cellular services; and because these rules incorporate a standard

of reasonableness, and because resolution of these issues could benefit from agency expertise, and because uniformity in this area of resale policy is desirable, the Court concludes that Plaintiffs' causes of action are within the primary jurisdiction of the FCC. *See City Wide Cellular*, Exhibit B of AirTouch's Reply at 14 (reaching this conclusion). As such, the Court shall refer the matter to the FCC and stay the action. *United States v. Henri*, 828 F.2d 526, 528 (9th Cir.1987).

IT IS SO ORDERED.

---

**7.** The Court finds that plaintiffs' fears of "needless expense, burden, and delay," also fail to convince the Court it is better suited than the FCC to resolve the dispute. Indeed, "referral is mandatory under Ninth Circuit precedent once the doctrine of primary jurisdiction applies." *Excellular*, Exhibit C at 4 n.

2, citing *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1364 n. 15 (9th Cir. 1987). The balance of delay versus the advantages of applying the primary jurisdiction doctrine clearly militate in favor of a referral to the FCC.